**NEWMARKET MANUFACTURING COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

Civ. A. No. 53–886.

United States District Court
D. Massachusetts.

April 15, 1955.

David R. Pokross, Peabody, Brown, Rowley & Storey, Boston, Mass., for plaintiff.

Edmund C. Grainger, Jr. Sp. Asst. to the Atty. Gen., for defendant.

WYZANSKI, District Judge.

Newmarket Manufacturing Company, a Massachusetts corporation, on September 26, 1951 caused the organization of Newmarket Manufacturing Company, a Delaware corporation. For bona fide purposes, on November 30, 1951, in accordance with inter-corporate Articles of Consolidation and an Agreement of Merger, and pursuant to Mass.G.L.(Ter. Ed.) c. 156, §§ 46A–46D and Delaware Revised Code 1935, as amended c. 65, §§ 59 and 60, 8 Del.C. §§ 251, 252, 259, the Massachusetts corporation was merged into and consolidated with the Delaware corporation.

The details are set forth in a stipulation, and need not be repeated. For present purposes it will be sufficient rapidly to summarize the effect of that

merger. The consolidated corporation acquired from the Massachusetts corporation all its assets and rights, (except that it did not acquire any right which it could not have exercised under the law under which it existed immediately prior to the merger). The consolidated corporation became liable for all the obligations of the Massachusetts corporation. The consolidated corporation had the same business as the Massachusetts corporation, the same officers, the same stockholders, even the same outstanding stock certificates. Moreover, having been created at the behest of and with funds from the Massachusetts corporation, its assets were exclusively derived from the Massachusetts corporation. After the merger, the Massachusetts corporation ceased to exist as a separate corporation.

The question presented is whether under § 122 of the Revenue Code of 1939, as amended, 26 U.S.C.A. § 122, a net operating loss incurred by the consolidated corporation in its fiscal year December 1, 1951 to November 30, 1952 (that is, after the merger) may be carried back to be deducted from the income tax liability attributable to the separate operations of the Massachusetts corporation for the period January 1, 1951 to November 30, 1951 (that is, before the merger). This form of stating the question deliberately uses the phrase "income tax liability attributable to the separate operations of the Massachusetts corporation", without saying whether in connection with that liability: "the taxpayer" is the Massachusetts corporation or the consolidated corporation or both.

The relevant federal tax statutes follow.

Section 23 of the Internal Revenue Code of 1939, as added by § 211(a) of the Revenue Act of 1939, c. 247, 53 Stat. 862, 26 U.S.C.A. § 23, provides:

"*Net operating loss deduction.* For any taxable year beginning after December 31, 1939, the net operating loss deduction computed under section 122."

Section 122 of the Internal Revenue Code of 1939, as added by § 211(b), Revenue Act of 1939, supra, and as amended by § 153(a), Revenue Act of 1942, c. 619, 56 Stat. 798, and § 215(a), Revenue Act of 1950, c. 994, 64 Stat. 906, makes this provision for a net operating loss deduction:

"(b) *Amount of carry-back and carry-over.*

"(1) *Net operating loss carry-back.*

\*  \*  \*  \*  \*  \*

"(B) Loss for taxable year beginning after 1949. If for any taxable year beginning after December 31, 1949, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-back for the preceding taxable year. \* \* \*"

Plaintiff says that the stated question should be answered affirmatively because within the meaning of § 122(b) (1), it is "the taxpayer". The argument proceeds in this manner. The effect of a merger is to be determined by local law, —here the law of Massachusetts and of Delaware. Under both of these local laws the Massachusetts and the Delaware corporations after the merger became identical. This is shown by Aspinook Corp. v. Commissioner of Corporations & Taxation, 326 Mass. 327, 94 N.E.2d 366, which held that when a Delaware corporation had merged with another Delaware corporation under the Delaware statute the consolidated corporation could prosecute an application for abatement of a Massachusetts state excise tax previously filed by one of the two merging corporations. The reason given was that only the separate existence of the constituent corporations ceased, and that both corporations nonetheless continued to exist in the consolidated corporation 326 Mass. at pages 330–331, 94 N.E.2d 366. Where identity between the merging corporations and the consolidated corporation is recognized by local law, then, so the argument runs, the federal tax law accepts the identity. Indeed, it is said, such identity has been recognized in connection with carry-back provisions, Moldit, Inc. v. Jarecki, D.C.N.D.Ill., Aug. 13, 1953, (P. H. par. 72, 681), as well as in connection

with unused excess profits credits. Stanton Brewery, Inc., v. Commissioner, 2 Cir., 176 F.2d 573.

There are two fundamental vices in this argument. First is the erroneous assumption that the federal tax law determines the identity of the taxpayer under federal law by reference to state rules of law or private agreements governing mergers. However, the question whether the same taxpayer is involved in two different accounting periods under federal law is to be decided exclusively by federal tax law. Second is the fallacious proposition that the Delaware corporation is the same person as the Massachusetts corporation merely having, as plaintiff's brief contends, another domicil and another name. However, even if the situation at bar involved two corporations chartered by the same state it would not be true that the identity of one corporation survives when merged with another. The state could, of course, transfer from one corporation to another certain rights and privileges. But it could transfer only such rights and privileges as it controlled. For example, it could not (without the consent of another sovereign) transfer the right to do business in a foreign state, or the right to a franchise, license, or tax credit given by a foreign state or the federal government. The separate identity of two corporations, their permanent distinction, is underlined where, as in the case at bar they derive their charters from different states. Where two corporations respond to different sovereigns, are governed by different laws, and hence have different privileges, powers, immunities, and obligations they could never be identical. Moreover, only in the most metaphorical and inaccurate sense does the second corporation embrace the identity of the first. And such inaccurate metaphors have commonly been rejected in applications of federal tax law. Cf. Commissioner of Internal Revenue v. Phipps, 336 U.S. 410, 69 S.Ct. 616, 93 L.Ed. 771.

But it may be contended that plaintiff can succeed on the narrower theory accepted by two judges of the Court of Appeals in the Stanton Brewery Inc. case. The majority in that case, noting that a consolidated corporation resulting from a merger was primarily, not merely derivatively, liable for a constituent corporations federal tax liability, held that the consolidated corporation was "the taxpayer" entitled to carry forward the constituent's company excess profits credit acquired in one year for the benefit of the consolidated company in a subsequent year. Judge Learned Hand dissented on the ground that tax privileges of this type "are ordinarily lost by transfers by one corporation to another; and the form of the transfer cannot be important. We have no warrant for supposing that Congress in general regards such credits as parts of a 'universitas juris,' passing, with the chattels, choses in action and the rest, like good-will or trade-marks." 176 F.2d at page 578. This dissent has commended itself to most courts considering the problem of tax privileges passing from a constituent corporation to a consolidated corporation into which it was merged. Libson Shops, Inc. v. Koehler, D.C.E.D.Mo., March 23, 1955; E. & J. Gallo Winery v. Commissioner, Tax Court, April 17, 1953. (1953 P–H T.C. Mem.Dec., par. 53,131), California Casket Co. v. Commissioner, 19 T.C. 32. This Court also agrees with Judge Hand's views, rather than those of the majority of the court in the Stanton Brewery Inc. case. One difficulty underlying the opinion of the majority in Stanton is its premise that because X is primarily liable for a tax on Y's activities, X is necessarily to be regarded as the taxpayer. Many sales taxes and other levies are directly imposed upon and collectible from persons who are not the taxpayers and who are not entitled to credits or other tax advantages. However, it is unnecessary to attack the general reasoning used in the Stanton case, for even if it applied to excess profits credits carried *forward* it is not applicable under the statute here involved so as to permit operating losses to be carried *backward* from a consolidated corporation to its constituent corporations. An attempt to

carry back presents at once the problem of determining to which of the constituent corporations, and in what proportions, the carry back shall be allowed. In the case at bar, for example, is the carry back to go entirely to reduce liability on account of the Massachusetts corporation's operations in the first eleven months of 1951, completely disregarding the fact that the Delaware corporation had a separate existence for more than two of those months? What would be the situation if there were half-a-dozen constituent corporations all of whom had had profits? And if a carry back is allowed in the case at bar can it be founded on some statutory language or principle which will make the ruling here inapplicable to a case where a corporation having a profit in one year is merged into and consolidated, for unquestionably appropriate business motives, with a corporation which had theretofore acquired a substantial part of its assets from sources quite independent of the first corporation? These questions strongly support the position that the 1939 Revenue Code neither in language, nor in intent, permits a carry back of losses from a consolidated corporation to any of its constituent corporations.

Moreover, while this Court has, and ought to have, no view, as to whether a carry back represents sound tax policy or accomplishes a socially desirable objective, the Court may appropriately note that there is nothing shocking or manifestly unjust or absurdly technical in concluding that the 1939 Code does not permit the carry back of a post-merger loss sustained by a consolidated corporation to reduce a liability incurred on account of the pre-merger operations of a constituent company. A carry back of losses has not been permitted where, though there was no merger, the substance was not far different from a merger, as, for example, where the corporation sustaining the loss had taken over the assets and liabilities of a corporation that had earlier made a profit. Standard Paving Co. v. Commissioner, 10 Cir., 190 F.2d 330; Donohue v. United States,

D.C.E.D.Mo., 112 F.Supp. 660. And compare the refusal in New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348 to permit a corporation which took over the assets, liabilities, and operations of another corporation to carry forward that other corporation's losses so as to take advantage of the then § 204(b) of the Revenue Act of 1921, c. 136, 42 Stat. 227.

In short, this Court concludes that under § 122 of the Internal Revenue Code of 1939 a consolidated corporation cannot carry back its losses in one year to reduce the tax liability incurred in an earlier year due to operations of one of its constituent corporations. This conclusion maintains the familiar doctrine that, except where Congress speaks clearly to the contrary, ordinarily tax law respects distinctions between corporate entities. Moline Properties v. Commissioner, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499; Burnet v. Commonwealth Imp. Co., 287 U.S. 415, 53 S.Ct. 198, 77 L.Ed. 399.

Judgment for defendant.