**LIBSON SHOPS, Inc., Appellant,**

v.

**Gustave F. KOEHLER, District Director of Internal Revenue, Appellee.**

No. 15397.

United States Court of Appeals
Eighth Circuit.

Jan. 19, 1956.

Rehearing Denied Feb. 16, 1956.

Owen T. Armstrong, St. Louis, Mo. (Lowenhaupt, Mattingly, Chasnoff & Stolar, St. Louis, Mo., were with him on the brief), for appellant.

Harry Marselli, Atty., Dept. of Justice (H. Brian Holland, Asst. Atty. Gen., and Ellis N. Slack and Harry Baum, Attys., Dept. of Justice, Washington, D. C., and Harry Richards, U. S. Atty., St. Louis, Mo., were on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and VOGEL, Circuit Judges.

VOGEL, Circuit Judge.

The sole question involved in this case is whether the appellant, as the surviving corporation in a statutory merger

of seventeen separate corporations, in computing its net income for a taxable period commencing on the date of the merger, is entitled to carry over and deduct net operating losses sustained by three of the merged corporations in taxable periods ended prior to the date of the merger under the provisions of §§ 23(s) and 122(b) (2) (C) of the Internal Revenue Code of 1939, 26 U.S.C. §§ 23(s), 122(b) (2) (C).

The facts, as found by the district court and as stipulated by the parties, may be summarized as follows:

The appellant, Libson Shops, Inc., is a Missouri corporation with offices in St. Louis, Missouri. It was originally incorporated on January 2, 1946, as Libson Shops Management Corporation to supervise and manage certain other corporations formed for the purpose of operating stores for the sale of women's wearing apparel. Its articles of incorporation also authorized it to engage in the business of selling apparel. Of the other corporations, ten were also incorporated in Missouri on January 2, 1946, one was incorporated in Missouri on January 8, 1946, and four were incorporated in Illinois on January 2, 1946. An additional corporation, Hampton Libson Shops, Inc., was incorporated in Missouri on May 28, 1948. All of the outstanding stock of each of the corporations was owned directly or indirectly by the same eight individuals and in the same proportions.

On August 1, 1949, pursuant to the laws of Missouri and Illinois, the seventeen separate operating corporations were merged into one, the taxpayer (appellant), and taxpayer's stock was issued in exchange for the stock of the merged corporations. Under the terms of the merger, the name of the taxpayer corporation was changed, the amount and par value of its stock was revised and its business purposes were extended. After the merger, the taxpayer, appellant, operated the stores which had formerly been operated by the merged corporation.

Prior to the merger, two of the Illinois corporations and one Missouri corporation had sustained net operating losses from their respective businesses.

In the year following the merger, that is the taxable year involved herein, each of the businesses formerly operated by such three corporations continued to sustain a net operating loss.

In its income tax return for the first taxable year after the merger, the taxpayer claimed as a net operating loss carry-over and deduction the net operating losses sustained before the merger by the three corporations above referred to. Such deduction was disallowed by the commissioner and the appellant paid the resulting tax deficiency. It then claimed a refund which was disallowed; whereupon, it instituted the present action. The district court held that the claimed net operating loss deduction was not permissible under the law and sustained the commissioner's disallowance of the deduction. This is an appeal from the district court's action.

The statute involved, insofar as it may be applicable herein, is as follows: Section 122(b) (2) (C) Internal Revenue Code of 1939 as amended by Revenue Act of 1951, 65 Stat. 452, 505, effective for taxable years beginning after December 31, 1948:

"(C) Loss for taxable year beginning after December 31, 1947, and before January 1, 1950. *If for any taxable year beginning after December 31, 1947 and before January 1, 1950, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-over for each of the three succeeding taxable years,* except that the carry-over in the case of each such succeeding taxable year (other than the first succeeding taxable year) shall be the excess, if any, of the amount of such net operating loss over the sum of the net income for each of the intervening years computed—". (Emphasis supplied.)

222

It is the appellant's position that the surviving corporation in a statutory merger, as distinguished from a new corporation in other kinds of reorganization, is entitled to carry over and deduct losses sustained in prior years by other parties to the reorganization.

Appellant concedes that in New Colonial Ice Co., Inc., v. Helvering, 1934, 292 U.S. 435, 54 S.Ct. 788, 789, 78 L.Ed. 1348, the Supreme Court ruled out the conclusion that the benefit of a carry-over extends to *any* successor. It argues that in the New Colonial Ice case, the statute involved was worded slightly differently than that with which we are here concerned, in that it provided that where " * * * any taxpayer has sustained a net loss * * * " the same shall be deducted from the net income of "the taxpayer" for the succeeding taxable year, whereas the statute here does not repeat the term "taxpayer". That is, the statute does not say if the taxpayer has a loss, such loss shall be a carry-over for succeeding taxable years *of the taxpayer*. It takes the position that the failure to expressly repeat the term "the taxpayer" is significant as suggesting that the statute does not limit the right to the carry-over to the person who sustained the loss. Appellant points out that "the right to the carry-over is stated in the passive voice—the statute does not say that, if the taxpayer has a loss *he* shall be entitled to a loss carry-over; that it says only that such loss *shall be* a carry-over". From this appellant argues that Congress was not concerned with who sustained the loss but with the fact of the loss itself, and that it intended to confer the tax benefit thereof to anyone who could associate himself with the loss, such as a successor corporation in a corporate reorganization.

■ Much is attempted to be made of little. We see no significance in the failure to repeat the term "taxpayer" in the present statute. In providing that if the taxpayer has a loss such loss shall be a carry-over, Congress could only have meant such carry-over was for the ben-

efit of the taxpayer referred to. Had Congress intended that this right to a loss carry-over be transferable to someone other than the original taxpayer, it would have said so. In New Colonial Ice Co., Inc., v. Helvering, supra, the Supreme Court said, 292 U.S. at page 440, 54 S.Ct. at page 790:

" * * * the statutes have disclosed a general purpose to confine allowable losses to the taxpayer sustaining them, *i. e.*, to treat them as personal to him and not transferable to or usable by another.

"Obviously, therefore, a taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms."

The Supreme Court, in the case of Interstate Transit Lines v. Commissioner of Internal Revenue, 1943, 319 U.S. 590, 593, 63 S.Ct. 1279, 1281, 87 L.Ed. 1607, stated:

" * * * the now familiar rule that an income tax deduction is a matter of legislative grace and that the burden of clearly showing the right to the claimed deduction is on the taxpayer. New Colonial Ice Co., Inc., v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348; Deputy v. du Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 366, 84 L.Ed. 416."

In order to obtain credit for the loss carry-over appellant must establish that it is the same "taxpayer" having the net operating loss.

Arriving at the same conclusion, the trial court stated the question herein as follows:

" * * * is the survivor corporation the same as each of the corporations whose tax credit the merged corporation would appropriate?"

It found that there had been much more than a "comparatively minor change", Stanton Brewery, Inc., v. Commissioner of Internal Revenue, 2 Cir., 1949, 176 F.2d 573, 575, between the merged cor-

porations and the appellant and concluded:

"We cannot on this record hold plaintiff and any one of the corporations having either of tax credits in issue, is the same corporation.

"There are far too many differences between the new or survival corporation and each of the old corporations that must fail to survive, to find the corporation surviving is for tax credit purposes the same as the corporations that have ceased to exist."

The trial court further stated:

"The effect of a ruling such as plaintiff seeks would be establishing a precedent susceptible of widespread abuse. That is if Federal courts are to consider themselves bound by state laws and merger agreements under them in tax matters. Such a rule might result in a different Federal tax status for corporations in each state. * * * The law must operate uniformly. It cannot make fish of one and fowl of another. And so bankrupt corporations with tax credits would find themselves the object of desirable purchase or 'merger' by or with corporations with tax liabilities, in order that after purchase the tax credits could be used to offset taxes due, just as plaintiff would do in this case. Regardless of what the motive or motives for including the corporations with tax credits in the merger, we have no doubt that use of their tax credits was one. The corporations holding the tax credits could not use them, as apparently the stipulation indicates the stores operated by the corporations having tax credits continued to lose money."

Appellant in this case relies principally upon Stanton Brewery, Inc., v. Commissioner of Internal Revenue, supra. The issue there, as stated by the majority opinion, was:

" * * * whether or not, after a merger, the resulting corporation is

entitled, in determining its adjusted excess profits net income, to carry over the unused excess profits credit of one of its components for the two years preceding the merger."

The John Stanton Brewing and Malting Company had merged with its wholly owned subsidiary, The Stanton Brewery, Inc. Both were New York corporations and the merger was effected under the New York stock corporation law. The John Stanton Brewing and Malting Company, with its name changed to The Stanton Brewery, Inc., was the surviving corporation. In determining its adjusted excess profits net income for 1942, the surviving corporation deducted the unused excess profits credits of its merged subsidiary for 1940 and 1941. The commissioner disallowed the deduction. The statute therein involved was § 710(c) (3) (B) of the Internal Revenue Code of 1939, which in part provides:

" * * * If * * * the taxpayer has an unused excess profits credit, such unused excess profits credit shall be an unused excess profits credit carry-over for each of the two succeeding taxable years * * *." 56 Stat. 901; 26 U.S.C. § 710(c) (3) (B).

In considering the purpose of the statute, the court said, 176 F.2d at page 574:

"As is well known, Congress sought by the excess profits tax, I.R. C. §§ 710–736, 26 U.S.C.A. §§ 710–736—imposed in 1940 and repealed in 1945—to capture for the government the amount of corporate profits of any one year which were excessive in relation to the like receipts during an earlier or base period (normally 1936–1939). But it was considered equitable that lean years should be set off against lush ones to strike some sort of average, and hence we have the device of the 'unused excess profits credit carry-back and carry-over' from one tax year to another."

The court held therein that since the successor corporation became directly liable

under the laws of the State of New York for outstanding debts of the merged corporation, it should be deemed to be the same "taxpayer" as the merged corporation for purposes of applying the carry-over provision. It said that the successor corporation was a " * * * union of component corporations into an all-embracing whole which absorbs the rights and privileges, as well as the obligations, of its constituents", by operation of state law and accordingly was the "taxpayer" presently obligated to pay their taxes and entitled to their credits under the federal tax law.

The court stated, at page 577:

"Our conclusion that petitioner is entitled to the unused excess profits credit carry-overs of its component corporations seems to us, therefore, the reasonable interpretation of the statutory language. Moreover it seems to us *the one which will carry out the evident statutory purpose, since it accords the privileges of the carry-over provisions to what is essentially a continuing enterprise,* entitled to all their benefits in ameliorating otherwise harsh tax consequences of fluctuating profits or expanding business." (Emphasis supplied.)

In a strongly dissenting opinion in the Stanton case, Judge Learned Hand stated, at page 578:

"A statute so intricate and detailed as this leaves little latitude for interpretation. Moreover, I do not think that it is more consistent with any declared purpose that I can find, to extend the privilege of a 'carry-over' to the taxpayer at bar. Indeed, as the decisions cited in my brothers' opinion show, privileges, closely akin in purpose to this, are ordinarily lost by transfers by one corporation to another; and the form of the transfer cannot be important. We have no warrant for supposing that Congress in general regards such credits as parts of a 'universitas juris,' passing, with the chattels, chos-es in action and the rest, like goodwill or trade-marks."

Without taking issue with the majority's opinion in the Stanton case, we point out that it is distinguishable on its facts. The Stanton case involved the merger of one operating corporation and a parent holding company. The business carried on after the merger was substantially the same as that which had theretofore been carried on by the merged operating corporation, and without the merger the latter would have been entitled to the claimed carry-over. The majority opinion refers to the fact that the privilege of the carry-over is accorded to what they refer to as "essentially a continuing enterprise".

In the case before us, we do not have "essentially a continuing enterprise". We are concerned with the merger of seventeen corporations, each of them operating an individual enterprise. Sixteen of the corporations operated sixteen individual stores in sixteen different places, four of them in Illinois and the remainder in Missouri. The seventeenth corporation provided supervisory and managerial services for the other sixteen. The appellant here is attempting to pool seventeen separate enterprises and level the ups and downs of their economic fortunes. We can see no distinction (except corporation as opposed to individual) between the situation confronting us in this case and that in which seventeen individuals, each owning and operating a separate and distinct business, trying to pool their resources and liabilities into one ownership and thereby attempting to take credit for the loss carry-overs of three of the individuals whose enterprises had not returned a profit in the years prior to the combined ownership. The rule contended for by appellant would obviously give unfair advantage to corporations over individuals.

Uniformity of administration of tax laws should be assured all taxpayers.

It is argued that all of the outstanding stock of each of the corporations was owned directly or indirectly by the same

individuals and in the same proportions, and that those stockholders have a like interest in the merged corporation, the appellant herein. In other words, we are asked to look behind the corporate fiction to the true owners, the stockholders.

In dealing with a somewhat similar contention, the Supreme Court in New Colonial Ice Co., Inc., v. Helvering, supra, stated, 292 U.S. at page 441, 54 S. Ct. at page 791:

"Thus the contention that the two corporations were practically the same entity and therefore the same taxpayer has no basis, unless, as the petitioner insists, the fact that the stockholders of the two corporations were substantially the same constitutes such a basis.

"As a general rule a corporation and its stockholders are deemed separate entities (Pullman Car Co. v. Missouri Pacific Ry. Co., 115 U.S. 587, 596–597, 6 S.Ct. 194, 29 L.Ed. 499; Donnell v. Herring-Hall-Marvin Safe Co., 208 U.S. 267, 273, 28 S. Ct. 288, 52 L.Ed. 481; United States v. Delaware, L. & W. R. Co., 238 U.S. 516, 527–529, 35 S.Ct. 873, 59 L.Ed. 1438; Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634; Klein v. Board of Tax Supervisors, 282 U.S. 19, 24, 51 S.Ct. 15, 75 L.Ed. 140) and this is true in respect of tax problems. (Klein v. Board of Tax Supervisors, 282 U.S. 19, 24, 51 S.Ct. 15, 75 L.Ed. 140; Dalton v. Bowers, 287 U.S. 404, 410, 53 S.Ct. 205, 77 L.Ed. 389; Burnet v. Clark, 287 U.S. 410, 415, 53 S.Ct. 207, 77 L.Ed. 397; Burnet v. Commonwealth Improvement Co., 287 U.S. 415, 418–420, 53 S.Ct. 198, 77 L.Ed. 399.)"

At page 437 of 292 U.S., at page 789 of 54 S.Ct.:

"The question presented is— where all the assets and business of an older corporation are taken over by a new corporation, specially organized for the purpose and having substantially the same capital structure, in exchange for a portion of its stock, which is distributed by the older corporation among the latter's stockholders share for share, thereby retiring the old shares, is the new corporation entitled, notwithstanding the change in corporate identity and ownership, to have its taxable income for the succeeding period computed and determined by deducting from its net income for that period the net losses sustained by the older corporation in the preceding period?"

At page 439 of 292 U.S., at page 790 of 54 S.Ct.:

"The petitioner insists that *the continuity of the business was not broken* by the transfer from the old company to the new; and this may be conceded. But it should be observed that this continuity was accomplished by deliberate elimination of the old company and substitution of the new one. Besides, *the matter of importance here, as will be shown presently, is not continuity of business alone but of ownership and tax liability as well.* Had the transfer from one company to the other been effected by an unconditional sale for cash, there would have been continuity of business, but not of ownership or tax liability. (Emphasis supplied.)

"Petitioner also insists that the ultimate parties in interest—stockholders and creditors—were substantially the same after the transfer as before; and this may be conceded. But there is here no effort to tax either creditors or stockholders."

At page 440 of 292 U.S., at page 790 of 54 S.Ct.:

"* * * but the statutes have disclosed a general purpose to confine allowable losses to the taxpayer sustaining them, *i. e.*, to treat them as personal to him and not transferable to or usable by another."

"When section 204(b) is read with the general policy of the statutes in mind, as it should be, we think it cannot be regarded as giving any support to the deduction here claimed. It brings into the statutes an exceptional provision declaring that where for one year 'any taxpayer has sustained a net loss' the same shall be deducted from the net income of 'the taxpayer' for the succeeding taxable year; and, if such loss be in excess of the income for that year, the excess shall be deducted from the net income for the next succeeding taxable year. Its words are plain and free from ambiguity. Taken according to their natural import they mean that the taxpayer who sustained the loss is the one to whom the deduction shall be allowed. Had there been a purpose to depart from the general policy in that regard, and to make the right to the deduction transferable or available to others than the taxpayer who sustained the loss, it is but reasonable to believe that purpose would have been clearly expressed."

Appellant herein would avoid the import of the New Colonial Ice case by directing attention to the fact that that case did not involve a statutory merger of corporations and the instant case does. Appellant accordingly believes that the Stanton case is authority for its contention and that the New Colonial Ice case is not in point. As we have previously indicated, however, there is factual difference between the instant case and Stanton. That is true as to New Colonial Ice as well. It does not, however, detract from the force of the Supreme Court's statements in New Colonial Ice, supra, and that "* * * the matter of importance here * * * is not continuity of business alone but of ownership and tax liability as well".

In tracing the identity of the "taxpayer", it would appear that the Supreme Court was concerned with both continuity of ownership and continuity of business. In the instant case we have seventeen separate businesses now merged into one. We are of the opinion that this case lacks both of the essential elements necessary to establishing the appellant as the "taxpayer" entitled to the deduction. There is here neither continuity of ownership nor continuity of business.

While we do not consider it as a logical argument against the appellant's position and is, after a fashion, arguing backwards, it is nevertheless pointed out that to allow the credit here would produce a most unusual result. It would mean that *the merger* of these corporations *and the merger alone* would be responsible for the appellant obtaining the credit sought, for if the three corporations sustaining the loss had not merged they would not have been able to take credit for the loss carry-over as they continued to sustain losses. Thus the appellant here is seeking solely by virtue of the merger of the corporations to obtain a benefit which would not have been available to the individual corporations themselves. The income against which appellant seeks to offset the loss did not come from the same business enterprises which gave rise to the loss. Congress intended by the statute involved to level out the ups and downs of *individual business enterprises, not combinations thereof* owned by different taxpayers.

Since this case was argued, there has been called to our attention a case of the United States Court of Appeals for the Ninth Circuit, E. & J. Gallo Winery v. Commissioner of Internal Revenue, 227 F.2d 699, 702. That case involved a statutory merger of two corporations under the laws of California. The facts disclosed in the opinion do not indicate whether or not there was involved a continuing enterprise, that is, "continuity of business". The court therein distinguished the case before it from the New Colonial Ice case on the ground that in the Gallo case there was a true statutory merger and in the New Colonial Ice case "there was nothing resembling a merger". Relying strongly on the Stan-

ton case, the court said, 227 F.2d at page 704:

"We hold and Stanton held, that the surviving corporation is the 'taxpayer,' who may use the unused excess profits tax credit of the former corporation."

Apparently the Gallo and Stanton cases stand on the same footing. Nevertheless, insofar as it can be said that they are parallel with the instant case, we must conclude that they are not persuasive.

Appellant also cites in support of its contention Helvering v. Metropolitan Edison Co., 1939, 306 U.S. 522, 59 S.Ct. 634, 83 L.Ed. 957. In that case, the court stated, 306 U.S. at page 523, 59 S.Ct. at page 635:

"These cases present the question whether, under the Revenue Acts of 1926 and 1928, a Pennsylvania corporation may deduct unamortized bond discount and expense in connection with redemption of the bonds of a subsidiary, all of whose assets it had previously acquired pursuant to local law."

That case holds that where a transferee corporation becomes liable for the debts of the transferor because of a merger, it may deduct losses or expenses arising out of the assumed debts, such as unamortized discount on bonds issued by the transferor. That is not the situation confronting the court in this case. The appellant here is not attempting to deduct a post-merger expense or loss of its own arising out of the assumption of the debts of the merged corporations, but to carry over and deduct pre-merger operating losses of three of the merged corporations. Furthermore, in the Metropolitan Edison case, the Supreme Court stated, 306 U.S. at page 529, 59 S.Ct. at page 638:

"It is important to note, however, that amongst the liabilities assumed were bonds on which the parent company was already liable as guarantor."

We do not consider Metropolitan Edison as authority for appellant's contention.

It is significant, in drawing fact distinctions between the case at bar and those relied on by the appellant, that the merged corporations in the present instance were not all of the same state. Of the three corporations which sustained losses which the appellant is attempting to take as net operating loss carry-overs, two of such corporations were from the State of Illinois and one from the State of Missouri. We find it particularly difficult to say that two legal entities brought into existence by the laws of the State of Illinois are now identical with and have become a creature brought into existence by the laws of Missouri.

In Newmarket Mfg. Co. v. United States, D.C.Mass.1955, 130 F.Supp. 706, the court had before it a situation almost on all fours with that confronting this court. There a Massachusetts corporation had caused the organization of a Delaware corporation. Subsequently the Massachusetts corporation was merged into and consolidated with the Delaware corporation. The consolidated corporation became liable for all the obligations of the Massachusetts corporation. It had the same business as the Massachusetts corporation, the same officers, the same stockholders and the same outstanding stock certificates. After the merger, the Massachusetts corporation ceased to exist as a separate corporation. The question there was whether, under § 122 of the Revenue Code of 1939, as amended, 26 U.S.C.A. (I.R.C. 1939) § 122, " * * * a net operating loss incurred by the consolidated corporation in its fiscal year December 1, 1951, to November 30, 1952 (that is, after the merger) may be carried back to be deducted from the income tax liability attributable to the separate operations of the Massachusetts corporation for the period * * * " before the merger.

In a well-reasoned opinion, the court therein stated, at page 707:

"Where identity between the merging corporations and the consolidated corporation is recognized by local law, then, so the argument runs, the federal tax law accepts the

identity. Indeed, it is said, such identity has been recognized in connection with carry-back provisions, Moldit, Inc., v. Jarecki, D.C.N.D.Ill., Aug. 13, 1953, (P. H. par. 72, 681), as well as in connection with unused excess profits credits. Stanton Brewery, Inc., v. Commissioner [of Internal Revenue], 2 Cir., 176 F.2d 573.

"There are two fundamental vices in this argument. First is the erroneous assumption that the federal tax law determines the identity of the taxpayer under federal law by reference to state rules of law or private agreements governing mergers. However, the question whether the same taxpayer is involved in two different accounting periods under federal law is to be decided exclusively by federal tax law. Second is the fallacious proposition that the Delaware corporation is the same person as the Massachusetts corporation merely having, as plaintiff's brief contends, another domicil and another name. However, even if the situation at bar involved two corporations chartered by the same state it would not be true that the identity of one corporation survives when merged with another."

The court held:

" * * * that under § 122 of the Internal Revenue Code of 1939 a consolidated corporation cannot carry back its losses in one year to reduce the tax liability incurred in an earlier year due to operations of one of its constituent coporations."

When Congress passed the statute here involved it was concerned with eliminating inequality, taxwise, between a business with alternating profit and loss as compared with a business with stable profits. It allowed the lean years of a business with alternating profit and loss to be set-off against the good years so as to strike an equitable tax liability as compared to a business having steady profits. We find nothing to suggest that Congress intended that a number of individual enterprises could pool their economic ups and downs and thus level off their tax burden between them. Congress was concerned with the economic fortunes of individual taxpayers, not combinations thereof.

Affirmed.