THE GRAMM TRAILER CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 46698. Filed June 25, 1956.

*H. A. Mihills, C. P. A.*, for the petitioner.
*Theodore E. Davis, Esq.*, for the respondent.

## OPINION.

Bruce, *Judge:* Petitioner contends that in computing its income tax liability for the fiscal year ended June 30, 1950, it is entitled to

carry over the net operating losses of Gramm-Curell for the fiscal period ended March 31, 1949, and for the 3-month period ended June 30, 1949, pursuant to sections 23 (s)[1] and 122 (b) (2) (C),[2] Internal Revenue Code of 1939. Respondent argues that the net operating loss carryover is not to be allowed petitioner because it is not the "taxpayer" within the meaning of section 122 (b) (2) (C).

Petitioner argues that "there is a continuity of interest between Gramm-Curell Equipment Company and the resulting corporation, The Gramm Trailer Corporation, and that 'the taxpayer,' during the year ended June 30, 1950, was made up of the two components, Gramm-Curell Equipment Company and The Gramm Trailer Corporation. That the resulting corporation must be regarded as the union of component corporations into an all-embracing whole which absorbs the rights and privileges, as well as the obligations of its constituents."

In support of its position petitioner relies primarily upon *Stanton Brewery, Inc.* v. *Commissioner,* 176 F. 2d 573 (C. A. 2, 1949), reversing 11 T. C. 310.[3]

In that case there was a merger of two New York corporations, the one a holding company and the other an operating company. The merger was carried out under provisions of the New York Stock Corporation Law, the new company taking the name of the operating company. The issue presented in that case was whether the resulting corporation in a statutory merger was entitled to carry over an unused excess profits credit of one of its components. The Court of Appeals, with Judge Learned Hand dissenting, held that the carryover was available to the petitioner therein under section 710 (c) (3) (B) of the Internal Revenue Code of 1939.[4] It criticized as overly technical

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:
*   *   *   *   *   *   *
(s) NET OPERATING LOSS DEDUCTION.—For any taxable year beginning after December 31, 1939, the net operating loss deduction computed under section 122.

[2] SEC. 122. NET OPERATING LOSS DEDUCTION.
(b) AMOUNT OF CARRY-BACK AND CARRY-OVER.—
*   *   *   *   *   *   *
(2) NET OPERATING LOSS CARRY-OVER.—
*   *   *   *   *   *   *
(C) Loss for taxable year beginning after December 31, 1947, and before January 1, 1950.—If for any taxable year beginning after December 31, 1947, and before January 1, 1950, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-over for each of the three succeeding taxable years, * * *

[3] See also *E. & J. Gallo Winery* v. *Commissioner,* 227 F. 2d 699 (C. A. 9, 1955), reversing a Memorandum Opinion of this Court dated April 17, 1953, and *Koppers Co.* v. *United States,* 134 F. Supp. 290 (Ct. Cl. 1955). Contra, *California Casket Co.,* 19 T. C. 32, 38–39.

[4] SEC. 710. IMPOSITION OF TAX. [Repealed by sec. 122 (a), Rev. Act 1945.]
(c) UNUSED EXCESS PROFITS CREDIT ADJUSTMENT.—
*   *   *   *   *   *   *
(3) AMOUNT OF UNUSED EXCESS PROFITS CREDIT CARRY-BACK AND CARRY-OVER.—
*   *   *   *   *   *   *
(B) Unused Excess Profits Credit Carry-Over.—If for any taxable year beginning after December 31, 1939, the taxpayer has an unused excess profits credit, such unused excess profits credit shall be an unused excess profits credit carry-over for each of the two succeeding taxable years, * * *

and unrealistic the assumption by the Commissioner that a "comparatively minor change in corporate form" was sufficient to deny the resulting corporation the benefit of a substantial tax credit. The court then stated, at page 575:

> We doubt, therefore, that any of these linguistic formulae suggests a really fruitful approach to the solution of our present problem. More properly we must regard the "resulting corporation" as the union of component corporations into an all-embracing whole which absorbs the rights and privileges, as well as the obligations, of its constituents.

The instant proceeding is clearly distinguishable from the *Stanton Brewery* case as well as the *Gallo Winery* and *Koppers Co.* cases. In each of those cases the merger was carried out in strict compliance with applicable State statutes and each of the merging corporations was held to be a component of the resulting corporation. Here, as petitioner concedes, there was no compliance with the Ohio statute relating to the merger or consolidation of corporations. See Throckmorton's Ohio Code Ann. secs. 8623–68 (Baldwin 1948). There was accordingly no statutory merger and Gramm-Curell did not become a "component" of petitioner.

It is true that on July 1, 1949, Gramm-Curell was liquidated and petitioner acquired its assets, assumed its obligations, and thereafter integrated Gramm-Curell's manufacturing facilities, inventories, etc., with its own. Except as to some differences in types or designs of trailers the two companies had been engaged in a similar kind of business, the manufacture and distribution of truck bodies, trailers, and other equipment, and there had been many intercompany transactions. Under no theory, however, are we able to find that the legal entity known as the Gramm-Curell Equipment Company was continued, after its liquidation, in petitioner. Curell's legal life was brought to a close. Upon its liquidation there was no transfer of powers, privileges, and immunities which gave it life to petitioner, as there would have been had there been a statutory merger.

On the facts presented, therefore, we think the present case is clearly distinguishable from the *Stanton Brewery* case and those cases which have followed it. Moreover, the policy considerations arising out of the ameliorating provisions of section 710 (c) (3) (B), when considered in conjunction with the purposes of the excess profits tax provisions, which lead to the conclusion in those cases (see *Koppers Co.* v. *United States, supra*), are not present here.

Section 23 (s) provides for the deduction of net operating losses computed under section 122, subsection (b) (2) (C) of which provides that "If for any taxable year beginning after December 31, 1947, and before January 1, 1950, the taxpayer has a net operating loss, such net operating loss shall be a net operating loss carry-over for each of the three succeeding taxable years * * *." In *New Colonial Co.* v. *Hel-*

*vering*, 292 U. S. 435, the Supreme Court, commenting on the construction of section 204 (b) of the Revenue Act of 1921, which contains substantially the same language as found in section 122 (b) (2) (C) of the Internal Revenue Code of 1939, said:

Its words are plain and free from ambiguity. Taken according to their natural import they mean that the taxpayer who sustained the loss is the one to whom the deduction shall be allowed. Had there been a purpose to depart from the general policy in that regard, and to make the right to the deduction transferable or available to others than the taxpayer who sustained the loss, it is but reasonable to believe that purpose would have been clearly expressed. And, as the section contains nothing which even approaches such an expression, it must be taken as not intended to make such a departure.

In our opinion petitioner is not "the taxpayer" who sustained the losses involved herein, within the meaning of section 122 (b) (2) (C) of the Internal Revenue Code of 1939. *New Colonial Co.* v. *Helvering, supra.* See also *Libson Shops, Inc.* v. *Koehler*, 229 F. 2d 220, certiorari granted June 4, 1956, 351 U. S. 961. We accordingly hold that, in computing its income tax liability for the fiscal year ended June 30, 1950, petitioner is not entitled to carry over the net operating losses sustained by Gramm-Curell Equipment Company for the fiscal year ended March 31, 1949, and for the 3-month period ended June 30, 1949.

*Decision will be entered for the respondent.*