*Decision will be entered under Rule 50.*

PATTEN FINE PAPERS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56828. Filed February 14, 1957.

*Robert E. Nelson, Esq.*, for the petitioner.
*J. Bruce Donaldson, Esq.*, for the respondent.

OPINION.

HARRON, *Judge:*

## *Issue 1. Capital Loss Carryover.*

Involved in the factual situation out of which this proceeding arises, are two corporations which were owned by related family groups. All of the stock of Patten Fine Papers, Inc., the petitioner, was owned by the wife and three children of Judson G. Rosebush, Sr., and all of the stock of Rosebush Brothers, Inc., the other corporation involved, was owned by Patten Fine, by two brothers of Judson, Sr., and by the wife of one of the brothers. During the year 1949, the income of both corporations was derived entirely from dividends, interest, and long-term capital gains.

On December 31, 1948, petitioner owned 68 per cent of the stock of Rosebush Brothers. On January 3, 1949, petitioner purchased the remaining shares, so that it then owned 100 per cent of the Rosebush Brothers stock. On November 29, 1949, Rosebush Brothers distributed, to petitioner, all of its assets, consisting of cash and an account receivable due from petitioner, in return for surrender of its stock. Rosebush Brothers was dissolved on December 1, 1949, by the filing of a certificate of dissolution with the State of New York.

Rosebush Brothers sustained net capital losses in the taxable year 1948 in the amount of $9,887.08. Petitioner realized net long-term capital gains, in the year 1949, in the amount of $73,085.05. For the year 1949, petitioner filed a consolidated income tax return with the consent of its affiliate, Rosebush Brothers, and a personal holding company tax return. In determining its net income for income tax purposes, and in determining its subchapter A net income for personal holding company tax purposes, petitioner deducted the net capital loss sustained by Rosebush Brothers in the taxable year 1948, from its own net capital gain for 1949. Respondent disallowed deduction of the net capital loss sustained by Rosebush Brothers in 1948, for both income tax and personal holding company tax purposes. Petitioner claims deduction for 1949, of the amount of net capital loss sustained in 1948, $9,887.08, by its liquidated subsidiary, Rosebush Brothers, as a capital loss carryover under section 117 (e) (1), 1939

Code. [3] Petitioner argues that it is entitled to this deduction as the successor in liquidation of Rosebush Brothers. Respondent argues that petitioner is a separate taxpayer from Rosebush Brothers, and that petitioner is therefore not entitled to take the deductions of Rosebush Brothers.

Regulations 104, section 23.31 (d) (10), [4] issued pursuant to section 141 (a) and (b), 1939 Code, [5] provide that a capital loss carryover from a year in which a consolidated return was not filed, to a year in which a consolidated return is filed, shall be allowed only to the extent of the net capital gain, in the year for which a consolidated return is filed, of the corporation which sustained the net capital loss to be carried over from a prior year. Petitioner consented to Regulations 104 under section 141 (a), 1939 Code. Respondent argues that, since a consolidated return was not filed in 1948 and Rosebush Brothers realized no net capital gain in 1949, the net capital loss sustained

---

[3] SEC. 117. CAPITAL GAINS AND LOSSES.

(e) CAPITAL LOSS CARRY-OVER.—

(1) METHOD OF COMPUTATIONS.—If for any taxable year beginning after December 31, 1941, the taxpayer has a net capital loss, the amount thereof shall be a short-term capital loss in each of the five succeeding taxable years to the extent that such amount exceeds the total of any net capital gains of any taxable years intervening between the taxable year in which the net capital loss arose and such succeeding taxable year. For purposes of this paragraph a net capital gain shall be computed without regard to such net capital loss or to any net capital losses arising in any such intervening taxable years.

[4] SEC. 23.31 [As amended by T. D. 5476, Sept. 10, 1945, 1945 C. B. 226]. Bases of tax computation.—

(d) Computations—years beginning after December 31, 1940.—

\* \* \* \* \* \* \*

(10) In no case shall there be included in the computation of the consolidated net capital gain for the taxable year as a consolidated net capital loss carry-over under (b) (2) (ix) (B) of this section (relating to net capital losses sustained by a corporation in years prior to the first taxable year in respect of which its income is included in the consolidated return) an amount exceeding in the aggregate the net capital gains of such corporation (determined without regard to any net capital loss carry-over) included in the computation of the consolidated net capital gain for the taxable year increased with respect to its separate net gains from involuntary conversions and from sales or exchanges of property subject to the provisions of section 117 (j).

[5] SEC. 141. CONSOLIDATED RETURNS.

(a) PRIVILEGE TO FILE CONSOLIDATED RETURNS.—An affiliated group of corporations shall, subject to the provisions of this section, have the privilege of making a consolidated return for the taxable year in lieu of separate returns. The making of a consolidated return shall be upon the condition that all corporations which at any time during the taxable year have been members of the affiliated group consent to all the consolidated return regulations prescribed under subsection (b) prior to the last day prescribed by law for the filing of such return. The making of a consolidated return shall be considered as such consent. In the case of a corporation which is a member of the affiliated group for a fractional part of the year, the consolidated return shall include the income of such corporation for such part of the year as it is a member of the affiliated group.

(b) REGULATIONS.—The Secretary shall prescribe such regulations as he may deem necessary in order that the tax liability of any affiliated group of corporations making a consolidated return and of each corporation in the group, both during and after the period of affiliation, may be returned, determined, computed, assessed, collected, and adjusted, in such manner as clearly to reflect the income- and excess-profits-tax liability and the various factors necessary for the determination of such liability, and in order to prevent avoidance of such tax liability.

by Rosebush Brothers in 1948 may not be carried over in the consolidated return for 1949, under Regulations 104.

However, petitioner does not base its claim for deduction of the capital loss carryover from 1948 upon the filing of consolidated returns. Petitioner's claim for this capital loss deduction is grounded upon the theory that, as the successor in liquidation of Rosebush Brothers, having absorbed all of the assets of Rosebush Brothers in exchange for all of its stock, petitioner acquired the capital loss deductions of Rosebush Brothers. In support of its position, petitioner cites *Stanton Brewery* v. *Commissioner*, 176 F. 2d 573 (C. A. 2, 1949), reversing 11 T. C. 310; *E. & J. Gallo Winery* v. *Commissioner*, 227 F. 2d 699 (C. A. 9, 1955), reversing a Memorandum Opinion of this Court; *Koppers Co.* v. *United States*, 134 F. Supp. 290 (Ct. Cl., 1955); *Newmarket Manufacturing Co.* v. *United States*, 233 F. 2d 493 (C. A. 1, 1956), reversing 130 F. Supp. 706; and *Moldit, Inc.* v. *Jarecki*, (D. Ill., Aug. 11, 1953) 53–2 U. S. T. C. par. 9551, 45 A. F. T. R. 1014.

In the *Stanton Brewery* case and in the *E. & J. Gallo Winery* case, it was held that a corporation formed by a statutory merger was entitled to carry over from a period prior to the merger, the unused excess profits credits of its component corporations, under section 710 (c) (3) (B), 1939 Code. In the *Koppers Company* case, the unused excess profits credit of a corporation formed by a statutory merger was held to be allowed to be carried back against the excess profits of its component corporations for a period prior to the merger, under section 710 (c) (3) (A). In the *Newmarket Manufacturing Company* case, and in the *Moldit* case, it was held that the net operating loss of a corporation formed by a statutory merger, can be carried back as a deduction from the income of the merged corporations in years prior to the merger. However, in *Libson Shops* v. *Koehler*, 229 F. 2d 220 (C. A. 8, 1956), certiorari granted June 4, 1956, which involved a statutory merger, the court refused to follow *Stanton Brewery* v. *Commissioner, supra*, and *E. & J. Gallo Winery* v. *Commissioner, supra*, quoting from the dissenting opinion of Chief Judge Learned Hand in the *Stanton Brewery* case.

Respondent relies upon *Gramm Trailer Corporation*, 26 T. C. 689 (on appeal C. A. 6). In that case we held that the petitioner was not entitled to deduct a net operating loss sustained by its liquidated subsidiary, as a net operating loss carryover under sections 23 (s) and 122 (b) (2) (C), 1939 Code. We think that the rationale of the *Gramm Trailer* case applies to a net capital loss carryover under section 117 (e) (1), involved in the case at bar. There, it was held that a liquidated corporation is not the same "taxpayer" as the parent corporation, within the meaning of section 122 (b) (2) (C). We think that a liquidated corporation is not the same "taxpayer" as the

parent corporation, also within the meaning of section 117 (e) (1). When Rosebush Brothers was liquidated, its legal life was brought to a close, and there was no transfer of its powers, privileges, and immunities to petitioner.

In *Gramm Trailer Corporation, supra*, we distinguished *Stanton Brewery* v. *Commissioner, supra; E. & J. Gallo Winery* v. *Commissioner, supra;* and *Koppers Co.* v. *United States, supra*, upon the ground that those cases involved statutory mergers and the decisions in those cases were based upon the theory that, by operation of law, the merged corporations continued to exist as components of the surviving corporation into which they were merged.

The cases of *Newmarket Manufacturing Co.* v. *United States, supra;* and *Moldit, Inc.* v. *Jarecki, supra*, are distinguishable upon the same ground. As in the *Gramm Trailer* case, in the instant case, Rosebush Brothers was not merged into petitioner, but it was liquidated. Therefore, its existence was terminated and it did not survive as a component of petitioner.

Petitioner relies also upon *Helvering* v. *Metro. Edison Co.*, 306 U. S. 522. In that case, the question was whether a surviving corporation could deduct the unamortized bond discount and expense of its two predecessor corporations. The Court held that these deductions were available to the surviving corporation, because in the case of one of the predecessor corporations, there was a statutory merger, and in the case of the other predecessor corporation there was a de facto merger, under State law. In the instant case, there is nothing to show that there was a de facto merger of Rosebush Brothers into petitioner, or that its assets passed to petitioner by any means other than a liquidation. It is stipulated that Rosebush Brothers was dissolved under New York law. Therefore, the *Metropolitan Edison* case is distinguishable on the same ground as the other cases cited by petitioner.

Rosebush Brothers and petitioner were separate entities. The net capital loss carryover of Rosebush Brothers is personal to it and may not be deducted by petitioner. See *New Colonial Co.* v. *Helvering*, 292 U. S. 435.

It is held that respondent did not err in disallowing deduction of the capital loss carryover in 1949.

### *Issue 2. Net Long-Term Capital Loss Deduction.*

Rosebush Brothers sustained a net long-term capital loss in the amount of $7,417.66, for its taxable period January 1, 1949, to December 1, 1949. It was liquidated on the latter date, petitioner receiving all of its assets in exchange for surrender of all of its stock,

without recognition of any gain or loss on the exchange, under section 112 (b) (6). In its consolidated income tax return, and in its personal holding company tax return, for the year 1949, petitioner deducted the net capital loss sustained by Rosebush Brothers, $7,417.66, in its taxable period January 1, 1949, to December 1, 1949. Respondent allowed the deduction for income tax purposes, but disallowed it for personal holding company tax purposes, on the ground that the filing of a consolidated income tax return was authorized, but that there is no authority for the filing of a consolidated personal holding company tax return.

Petitioner concedes that it was not authorized to file a consolidated personal holding company tax return, but it argues that, as the successor in liquidation of Rosebush Brothers, it was entitled to deduct the net long-term capital loss sustained by Rosebush Brothers in 1949, as a net long-term capital loss for the same year. Petitioner's argument in favor of allowing the deduction under this issue, is the same as its argument, under the first issue, in favor of allowing the capital loss carryover. For the same reasons that we hold it is not entitled to the capital loss carryover deduction, we hold that petitioner is not entitled to deduct the net long-term capital loss sustained by Rosebush Brothers in its taxable period January 1, 1949, to December 1, 1949.

Rosebush Brothers was a separate entity from petitioner. Its life was terminated by liquidation, and it did not survive as a component of petitioner. Its deductions are personal to it and may not be taken by petitioner. *New Colonial Co.* v. *Helvering, supra; Gramm Trailer Corporation, supra.*

*Issue 3. Deduction of Amount of Income Taxes in Computing Subchapter A Net Income.*

Petitioner, which reports its income on the cash basis, paid in 1950 the amount of $11,456.41, in respect of its income tax liability for 1949. In computing its subchapter A net income for personal holding company tax purposes in the year 1950, petitioner deducted that amount. Respondent disallowed the deduction for 1950, but determined a deduction of the amount of petitioner's 1949 income tax liability, in computing its personal holding company tax liability for 1949. He advances the alternative contention that if the deduction is allowed for 1950, no amount should be deducted for 1949 income tax liability in computing subchapter A net income for 1949.

Petitioner claims deduction, in 1950, of the amount of its 1949 income tax liability which was paid in 1950, $11,456.41, in computing

subchapter A net income, under section 505 (a) (1).[6]  It argues that the words "paid or accrued" in that section, have reference to the taxpayer's accounting method, and since petitioner was on the cash basis, it may take the deduction in the year in which it paid its income tax, 1950.

The question of whether the amount of income tax liability is deductible for personal holding company tax purposes in the year paid or in the year in respect of which the income tax liability was incurred, has been before this and other courts in numerous cases. We recently had occasion to review the authorities in *Mills, Inc.*, 27 T. C. 635.  A long quotation from that case should dispose of the issue now before us:

> The argument is sound if, and only if, the words "paid or accrued" in the statute have reference to the method of accounting regularly employed by the taxpayer in keeping its books.  That is what we early held in *M. W. Alworth*, 38 B. T. A. 656, and *Clarion Oil Co.*, 1 T. C. 751.  But the *Clarion Oil Co.* case was reversed by the Court of Appeals for the District of Columbia in *Commissioner* v. *Clarion Oil Co.*, 148 F. 2d 671, certiorari denied 325 U. S. 881, and we decided to follow the latter case in *Wm. J. Lemp Brewing Co.*, 18 T. C. 586.
>
> The rule of *Commissioner* v. *Clarion Oil Co.*, *supra*, to which we are committed, is that these words "paid or accrued" do not have reference to a particular accounting method employed by the taxpayer.  We had held in our Opinion in the *Clarion Oil Co.* case, *supra*, that the cash basis taxpayer, in computing its 1937 personal holding company tax, could only deduct taxes paid in that year, being the sum of $452.53, the amount of its income tax for 1936.  The Court of Appeals opinion held this was wrong, stating:
>
>> The scheme as a whole contemplates the application of the penalty tax solely to the income transactions of a single tax year, and it is income remaining after dividend disbursements and tax payments *for the taxable year* which is attacked by this surtax.  Hence *taxes* paid for a *previous* year, just as net *income* from a previous year, have no proper place in the calculation.  For these purposes it is a fair conclusion that income taxes are deemed to be paid out of income for the year for which they are levied.  Accordingly the allowance, as a deduction, of taxes amounting to $452 paid on *1936* income, as the Tax Court here found permissible, was wrong. * * *
>
> The opinion in the above case goes on to hold the cash basis taxpayer could accrue and take as a deduction the 1937 income taxes not paid until 1938.
>
> \*        \*        \*        \*        \*        \*        \*
>
> We again followed *Commissioner* v. *Clarion Oil Co.* in *De Soto Securities Co.*, 25 T. C. 175, only to be reversed by the Court of Appeals for the Seventh Circuit in *De Soto Securities Co.* v. *Commissioner*, 235 F. 2d 409.

---

[6] SEC. 505. SUBCHAPTER A NET INCOME.

For the purposes of this subchapter the terms "Subchapter A Net Income" means the net income with the following adjustments:

(a) ADDITIONAL DEDUCTIONS.—There shall be allowed as deductions—

(1) Federal income, war-profits, and excess-profits taxes paid or accrued during the taxable year to the extent not allowed as a deduction under section 23 ; but not including the tax imposed by section 102, section 500, or a section of a prior income-tax law corresponding to either of such sections.

The latter opinion is consistent with our early holdings before *Wm. J. Lemp Brewing Co., supra,* to the effect that "paid or accrued" means in accordance with the taxpayer's accounting method.

\* \* \* \* \* \* \*

We feel we must continue to follow the rule of *Commissioner* v. *Clarion Oil Co., supra,* which requires the issue be resolved in favor of respondent.

It is held that the amount of petitioner's income tax liability for 1949 is not deductible for personal holding company tax purposes in 1950.

Petitioner makes an additional contention in its brief: That respondent incorrectly computed the amount of its personal holding company surtax, by wrongly applying the alternative tax under section 117 (c). This alleged error was not assigned in the pleadings. It is well established that this Court will not consider issues not raised in the petition. *Camp Wolters Enterprises, Inc.,* 22 T. C. 737, affd. 230 F. 2d 555; *Earl V. Perry,* 22 T. C. 968. It follows that this issue is not properly before the Court.

On brief, petitioner contends that this matter is limited to correcting an error that "is mathematical in nature," and that this Court should direct the parties to recompute petitioner's personal holding company surtax under Rule 50 of this Court. Our answer to this is that petitioner oversimplifies the problem and errs in describing it as merely a mathematical mistake. Rather, a legal question is involved which relates to the proper method to be used in the computation of the amount of surtax which is due. Such question must be raised by the pleadings. Since it was not pleaded, it is not before the Court.

*Decision will be entered for the respondent.*