## AMERICAN PACIFIC WHALING CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7365.

Circuit Court of Appeals, Ninth Circuit.

Jan. 7, 1935.

Raymond G. Wright, H. B. Jones, Robert E. Bronson, and Kenneth G. Heisler, all of Seattle, Wash., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Carlton Fox, and Norman D. Keller, Sp. Assts. to the Atty. Gen., for respondent.

Before WILBUR and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

Petitioner seeks a review of the decision of the Board of Tax Appeals affirming the determination by the Commissioner of Internal Revenue of a deficiency in the income tax of petitioner for the year 1926 in the amount of $6,043.28.

Petitioner, a South Dakota corporation whose name prior to October, 1926, was North Pacific Sea Products Company, and the American Pacific Whaling Company, a Washington corporation, hereinafter, called the Washington company, were affiliated and rendered consolidated income tax returns for the years 1923, 1924, and 1925. For these years the operations of the Washington company resulted in a loss exceeding in amount the profit of petitioner, and at the end of the year 1925 there existed a net loss resulting from the operation of the Washington company for that year in an amount not less than $50,000 and which exceeded the taxable net income of petitioner for 1926.

In December, 1925, the petitioner acquired all of the capital stock of the Washington company, and as a part of the same transaction took over all of the property and assets and liabilities of the Washington company. Thereafter during 1926 petitioner operated these properties together with its own. The Washington company was formally dissolved in October, 1926, and shortly thereafter the name of petitioner was changed to American Pacific Whaling Company, and its return for 1926 was filed under that name.

The petitioner was engaged in the whaling business, which is of seasonal character, and the profits and income of such business for the year 1926 were entirely earned and accumulated prior to October, 1926; that is, prior to the time the Washington company was formally dissolved. The physical properties operated by the petitioner in 1926 consisted of seven boats and two shore stations in Alaska and a dock and warehouse in Washington. Four of these boats and the dock and warehouse in Washington had belonged to the Washington company, and with these four boats 388 whales were caught in 1926 by the petitioner's employees, or 66.78 per cent. of the total catch. The other three boats and shore stations had belonged to the petitioner, and with these three boats petitioner's employees caught 193 whales, or 33.22 per cent. of the total catch. On the hearing before the Board of Tax Appeals it was stipulated that:

"* * * If there is basis for segregation of income between the petitioner and American Pacific Whaling Company, the Washington Company, and if the principle of allocation is permissible in determining the income as between petitioner and the Washington Company for the taxable year 1926 (the respondent, however, not conceding such right of segregation or application of the principle of apportionment), the proper basis of apportionment would be in accordance with or in proportion to the number of whales caught, without regard to differences in kind or species; that although there might be some differences in kind, it was unnecessary to go into that. * * *"

The Board of Tax Appeals found that, if an apportionment should be made by allocating to each of the seven boats its proportionate share of the gross receipts from the products of the whales on the basis of the percentage caught by the crew of that boat, subtracting therefrom the cost of operating the boat and its proportionate share of the expenses of rendering the whales into marketable products, and calculating depreciation on the basis of the actual depreciation of the several properties, the result is that for the year 1926 a loss of $26,284.19 is attributable to the operation of the properties which had belonged to the petitioner prior to December 11, 1925, and an income of $71,049.26 to the operations of the properties which had been owned by the Washington company; thus allocating the entire consolidated net income of $44,765.07 to the operation of the properties formerly owned by the Washington company. However, if the depreciation allowable on all the properties is apportioned on the basis of the catch, the result is a loss of $8,137.96 attributable to petitioner, and gross income of $52,903.06 attributable to the operation of the property formerly owned by the Washington company. Under either method of allocation and apportionment, the income attributable to the operation of the properties formerly owned by the Washington company is less than the net loss of that company for 1925 ($62,943.37).

Petitioner's return for 1926 stated that it was not a consolidated return, but, in fact, the income from the operation of the business and property of the Washington company, up to the time of its dissolution in October, was included in petitioner's return for 1926, and it is stipulated that the Washington company had no other income. In its return for 1926 petitioner sought to deduct from the net income the net loss sustained by the Washington company in 1925 under section 206 (b) of the Revenue Act of 1926, 44 Stat. 9 (26 USCA § 937 (b), which is as follows:

"Sec. 206. * * * (b) If, for any taxable year, it appears upon the production of evidence satisfactory to the commissioner

that any taxpayer has sustained a net loss, the amount thereof shall be allowed as a deduction in computing the net income of the taxpayer for the succeeding taxable year (hereinafter in this section called 'second year') and if such net loss is in excess of such net income (computed without such deduction), the amount of such excess shall be allowed as a deduction in computing the net income for the next succeeding taxable year (hereinafter in this section called 'third year'); the deduction in all cases to be made under regulations prescribed by the commissioner with the approval of the Secretary."

The Commissioner refused to allow this deduction, and thereupon determined the deficiency in tax for 1926, which was affirmed by the Board of Tax Appeals.

It is the contention of petitioner that the petitioner and the Washington company were affiliated and filed a consolidated return for the year 1926, and that all of the income reported therein is attributable to the Washington company and is not taxable, inasmuch as the Washington company had sustained a deductible loss in 1925 in excess of such income. Petitioner's whole contention is based on the proposition that part of the property operated by petitioner during 1926 belonged to the Washington company during that time, and that the income derived therefrom was the income of the Washington company. The Board of Tax Appeals determined this fact against the contention of the petitioner.

The basic question in the case is whether or not the Board of Tax Appeals properly interpreted the stipulation between the parties to the effect that the petitioner "took over all the property and assets and liabilities of the Washington Company on December 11, 1925." Certainly this is not a stipulation that after that date the property was not owned by the Washington company. The stipulation was made at a time when the petitioner herein believed that it was entitled to the deduction of the loss of the Washington company by reason of its affiliation with that company during the year 1925. Consequently, it was not important to stipulate or to determine the question of the ownership of the assets of the Washington company from and after the 11th day of December, 1925. After the submission of the matter to the Board of Tax Appeals, the Supreme Court rendered its opinion in the case of Woolford Realty Co. v. Rose, 286 U. S. 319, 52 S. Ct. 568, 76 L. Ed. 1128, holding that the application of the net loss of a previous year to the deduction of a previous year is personal to the taxpayer. Upon the first hearing the petitioner had stated in its brief "that the sole question involved is the right to deduct, in computing consolidated net income for 1926, the 1925 net loss of the consolidated group, where such net loss is attributable to the member of the group which had *no* net income in 1926." (Italics ours.) Upon this theory the decision of the Supreme Court in Woolford Realty Co. v. Rose, 286 U. S. 319, 52 S. Ct. 568, 76 L. Ed. 1128, was decisive against the petitioner. In view of this situation, a petition for rehearing was granted by the Board of Tax Appeals, and the matter was submitted for consideration upon additional testimony and further stipulation as to the facts. It is now urged by the petitioner that a proper interpretation of the stipulation is that, although the property of the Washington company was taken over and operated by the petitioner, the Washington company remained the owner of the property. Upon this basis it is contended that our decision in Rasmusson v. Eddy's Steam Bakery, Inc., 57 F.(2d) 27, required a finding that income derived from the use of the assets of the Washington company which had been informally taken over by the sole stockholder and operated by it was the income of the Washington company and not of the stockholder. We see no escape from that proposition. In that case the sole stockholder had made an arrangement with the directors by which he was to take over all the assets of the corporation at their book value. Thereafter, and without any formal transfer to him of the property and without the payment of any consideration therefor, the stockholder took over and operated the property of the corporation. The Commissioner of Internal Revenue treated the earnings of the business thus operated by the sole stockholder as that of the corporation, and fixed an income tax thereon which was paid by the corporation. The corporation brought an action to recover the tax thus paid on the ground it had no income during the year, when the property was operated by its sole stockholder. We held that the income derived from the use of the property of the corporation and by the operation of its business was the income of the corporation and not of the stockholder. The transaction between the sole stockholder and its corporation involved in that case occurred in Montana and was controlled by the laws of the state of Montana. Here the transaction occurred in the state of Washington. Under the law of the state of Wash-

ington as well as under that of Montana a corporation can only be dissolved in accordance with the statutory proceeding therefor requiring the action of the superior court. Moore v. Los Lugos Gold Mines, 172 Wash. 570, 21 P.(2d) 253; Rem. Rev. Stat. Wash. § 3834.

■ We think a fair interpretation of the stipulation entered into between the parties before the Board of Tax Appeals is that the property of the Washington company was taken over and operated by the petitioner without any agreement with relation to the payment therefor and without any agreement as to the terms under which the property should be operated, and that it was assumed by the petitioner that as sole stockholder it could thus use the property pending formal proceedings for dissolution. It is true that there are statements made in the stipulation of facts which are consistent with the theory that there was a transfer of title. For instance, the stipulation contains the statement that: "Thereafter [December 11, 1925] during the year 1926 the petitioner operated all of the properties previously owned by the Washington Company," but this stipulation is not inconsistent with subsequent ownership by the Washington corporation. Assuming, as we hold, that the stipulation of the parties is that the ownership of the property of the Washington company remained in that company until it was dissolved and that such property was operated by the petitioner, it is clear from the evidence that under the stipulation as to the proper method of the apportionment of the income of the two corporations, and by any reasonable method of apportioning expenses and depreciation between them, the entire net income of the petitioner during the year 1926 is attributable to the property of the Washington company. That being so, the petitioner in a consolidated return would be entitled to offset against that income (derived from the use of the property of the Washington company) the loss of the Washington company in the preceding taxable year which was greater than the income attributable to that company for the year 1926, and greater than the joint income of the affiliated corporations.

■ The Board of Tax Appeals held that the return filed by petitioner was not a consolidated return, and based its decision against the deduction of the loss of the Washington company in a previous year upon that holding. We think, however, that the Board was in error in that regard, for the reason that every item in the return is in fact a result of the joint operation of the properties belonging to the two companies, and the return claims a deduction of $62,943.37 resulting from the loss suffered by the Washington company in the previous year. It was filed, after the Washington company had dissolved, by the petitioner, who was the sole surviving member of the affiliated group. We see no reason why it should not be considered a consolidated return, notwithstanding the erroneous answer "No" to the question, "Is this a consolidated return?" See Utica Knitting Co. v. U. S., 68 Ct. Cl. 77; Autosales Corp. v. Commissioner (C. C. A.) 43 F.(2d) 931; Lucas v. Sterling Oil & Gas Co. (C. C. A.) 62 F.(2d) 951.

We conclude that the return filed by the petitioner was a consolidated return, that petitioner was entitled to deduct the loss of the Washington company in the previous taxable year from the income properly attributable to that corporation for the year 1926, and that, under the stipulated facts, by so doing the petitioner shows a loss instead of a profit during the year 1926, and for that reason the tax fixed by the Commissioner was erroneous and should be set aside. In view of the fact that the government contends that the stipulation in this case is in effect a stipulation that the ownership of the property of the Washington company was transferred to the petitioner on December 11, 1925, and that we hold the stipulation cannot be properly so interpreted, the order of the Board of Tax Appeals is reversed, and the case remanded to the Board of Tax Appeals with leave to the government to withdraw from the stipulation with reference to the ownership of the property of the Washington company from and after December 11, 1925, if so advised, with the right to the petitioner to present proof upon the question of ownership. If the proof shows that the taking over of the property of the Washington company by the petitioner was without definite agreement as to the ownership thereof and without agreement as to the compensation to be rendered for the use thereof, the tax levied by the Commissioner is to be set aside. If, however, it appears that there was a transfer of title for a consideration, or if there was an agreement with reference to the amount paid for the use thereof, the Board will render judgment upon the facts as determined by it, and the law as applied by it, not, however, inconsistent with this opinion.