DAVIS BROS. RESTAURANT, INC., ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6484–71, 6486–71—6495–71.   Filed July 2, 1973.

*Frazer Durrett, Jr.,* and *Richard M. Asbill,* for the petitioners.
*Joel Gerber,* for the respondent.

---

[1] The proceedings of the following petitioners are consolidated herewith: Fancy Foods, Inc., docket No. 6486–71; Davis Brothers Management Corporation, docket No. 6487–71; Georgia Restaurant Company, docket No. 6488–71; Reginald Investment Company, docket No. 6489–71; Davis Brothers, Inc., docket No. 6490–71; Davis Brothers, Inc. of Tennessee, docket No. 6491–71; Davis Brothers, Inc. of Marietta, docket No. 6492–71; Davis Brothers North DeKalb, Inc., docket No. 6493–71; Davis Brothers Bolton, Inc., docket No. 6494–71; and Davis Brothers Belvedere, Inc., docket No. 6495–71.

FEATHERSTON, *Judge:* Respondent determined deficiencies in petitioners' income tax for the fiscal year ending September 30, 1967, as follows:

| Docket No. | Petitioner | Deficiency |
|---|---|---|
| 6484–71 | Davis Bros. Restaurant, Inc | $2, 201. 45 |
| 6486–71 | Fancy Foods, Inc | 824. 41 |
| 6487–71 | Davis Bros. Management Corp | 24, 339. 47 |
| 6488–71 | Georgia Restaurant Co | [1] 4, 133. 34 |
| 6489–71 | Reginald Investment Co | 3, 308. 75 |
| 6490–71 | Davis Bros., Inc | 7, 110. 46 |
| 6491–71 | Davis Bros., Inc. of Tennessee | 1, 406. 65 |
| 6492–71 | Davis Bros., Inc. of Marietta | 4, 566. 67 |
| 6493–71 | Davis Bros. North DeKalb, Inc | 4, 566. 67 |
| 6494–71 | Davis Bros. Bolton, Inc | 932. 25 |
| 6495–71 | Davis Bros. Belvedere, Inc | 4, 566. 67 |

[1] This deficiency was determined on a return filed by Georgia Restaurant Co. and Subsidiary (Davis Bros. West End, Inc.).

The sole issue is whether Georgia Restaurant Co. and its subsidiary, Davis Bros. West End, Inc., filed a consolidated return under section 1501[2] and following sections, thereby terminating petitioners' election to compute their income tax with the benefit of the multiple surtax exemptions allowed pursuant to section 1562.

### FINDINGS OF FACT

At the time petitioners commenced these proceedings, Davis Bros., Inc. of Tennessee maintained its principal office in Oak Ridge, Tenn., and the other petitioners had their principal offices in Atlanta, Ga. Each petitioner utilizes a fiscal year ending on September 30, and for the fiscal year ending September 30, 1967, each filed a corporate income tax return with the Southeast Service Center, Internal Revenue Service, Chamblee, Ga. Georgia Restaurant Co. (hereinafter referred to as Georgia) and its subsidiary, Davis Bros. West End, Inc. (hereinafter West End), originally joined in the filing of a single return, and on June 13, 1969, and June 16, 1969, respectively, they filed amended separate returns.

During the fiscal year ending September 30, 1967, West End was a wholly owned subsidiary of Georgia. The stock in Georgia and in the other petitioners was owned as follows during this period:

| Name of corporation (petitioner) | Stockholders | Percent |
|---|---|---|
| Davis Bros. Restaurant, Inc | S. R. Davis | 100 |
| Fancy Foods, Inc | S. R. Davis | 100 |
| Davis Bros. Management Corp | S. R. Davis | 100 |
| Georgia Restaurant Co | S. R. Davis | 83 |
| | Unrelated parties | 17 |

[2] All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.

| Name of corporation (petitioner) | Stockholders | Percent |
| --- | --- | --- |
| Reginald Investment Co | S. R. Davis | 75 |
| | hn R. Davis | 25 |
| | (son of S. R. Davis) | |
| Davis Bros., Inc | S. R. Davis | 100 |
| Davis Bros., Inc. of Tennessee | Davis Bros., Inc | 100 |
| Davis Bros., Inc. of Marietta | S. R. Davis | 100 |
| Davis Bros. North DeKalb, Inc | S. R. Davis | 100 |
| Davis Bros. Bolton, Inc | S. R. Davis | 100 |
| Davis Bros. Belvedere, Inc | Davis Bros., Inc | 100 |

During the fiscal year here in controversy and for several prior years, petitioners (including West End) and three other corporations—Davis Bros. Hartford Plaza, Inc.; Davis Bros. Toco Hill, Inc.; and H & R, Inc.—were component members of a "controlled group of corporations."[3] With the exception of H & R, Inc., Davis Bros. Management Corp., and Reginald Investment Co., all the corporations were engaged in either the cafeteria, restaurant, or restaurant commissary businesss.

During the period in controversy, an accounting firm was employed to prepare the corporations' Federal income tax returns. Before the due date for the returns, the accounting firm filed, on behalf of each corporation, a Form 7044, "Application by a Corporation for Automatic Extension of Time to File U.S. Income Tax Return (Under section 6081(b) of the Internal Revenue Code)." This application extended the filing dates for the returns by 3 months. The application form states that "A parent corporation may request extensions for its subsidiaries where a consolidated return is to be filed." In the application filed by Georgia, dated December 15, 1967, West End was listed as a "Member of the Affiliated Group,"[4] and an affirmative answer was given to the question "Does application also cover subsidiaries to be included in a consolidated return?"

For several taxable years prior to the one ending September 30, 1967, petitioners, as members of a controlled group, had each elected to compute its income tax pursuant to section 1562. This election allowed each corporation to claim a full ($25,000) surtax exemption on its return. For the fiscal year ending September 30, 1967, each corporation in the controlled group (except Georgia and West End which joined in the filing of a single return) filed a separate return within the extension period, claimed a full surtax exemption, paid the additional tax imposed by section 1562(b), and stated they were members "of a controlled group subject to the provisions of * * * section 1562," thus indicating an intention to continue the multiple surtax election permitted by that section.

[3] The term "controlled group of corporations," as used herein, is defined in sec. 1563(a) and is discussed in fn. 5 *infra* and the related text.

[4] The term "affiliated group," as used herein, is defined in sec. 1504(a). See fn. 7 *infra* and related text.

On January 15, 1968, the accounting firm mailed Georgia's Federal income tax return for the fiscal year ending September 30, 1967, to Stanley R. Davis (hereinafter Davis), president of Georgia and West End, for signature. Enclosed with the return was a letter stating that "The Federal return which has been consolidated with Davis Brothers West End, Inc. is due on or before March 15, 1968, and as you will note from the return, * * * there is a balance due of $5,262.25."

The return filed by Georgia and West End combined the income, deductions, and credits of the two corporations, and this resulted in a tax liability for the two corporations which was about $3,300 less than would have been due if a consolidated return had not been filed. "Georgia Restaurant Company and Subsidiary" was entered in the portion of the return provided for the taxpayer's name. A check mark was placed in a box in the upper left corner of the return, indicating it was a "Consolidated return." Attached to the return was a Form 1122, "Return of Information and Authorization and Consent of Subsidiary Corporation Included in a United States Consolidated Income Tax Return," for West End which was filed with the return. That form, signed on behalf of West End, contained the following paragraphs:

The above-named subsidiary corporation [West End] hereby: (a) authorizes the above-named common parent corporation to make a consolidated income tax return on its behalf for the taxable year for which this form is filed; and (b) authorizes such common parent corporation (or, in the event of its failure, the Commissioner or the District Director of Internal Revenue) to make a consolidated income tax return on its behalf for each taxable year thereafter for which a consolidated return must be made by the affiliated group under the provisions of the consolidated return regulations.

The above-named subsidiary corporation, in consideration of the privilege of joining in the making of a consolidated return with the above-named common parent corporation, hereby consents to and agrees to be bound by the provisions of the above-mentioned regulations.

Also attached to the return was a Form 851 "Affiliations Schedule To be filed with each Consolidated Income Tax Return," which showed Georgia as a common parent corporation and West End as a subsidiary corporation. Both the forms and the return were signed by Davis.

On page 3 of the return filed by Georgia and West End, there was an affirmative answer to the question "Were you a member of a controlled group subject to the provisions of * * * section 1562?" A $25,000 surtax exemption was claimed on line 2 of the section entitled "Schedule J—Tax Computation." Also on that schedule was included an additional tax of $1,500 on the line entitled "If multiple surtax exemption is elected under section 1562, enter 6 percent of line 2."

Until petitioners' returns were audited by an internal revenue agent, petitioners took no further action with respect to their income tax returns for the fiscal year ending September 30, 1967. Following these audits, but prior to the issuance of notices of deficiencies, Georgia and West End filed amended separate returns on June 13, 1969, and June 16, 1969, respectively. On those returns, both corporations affirmed an election to claim multiple surtax exemptions under section 1562(a) and computed their separate tax liabilities accordingly.

Respondent determined that the multiple surtax exemption election of the controlled group of corporations was terminated by the filing of a consolidated return by Georgia and West End and computed the deficiencies set forth above.

### OPINION

In the ordinary situation, section 11(d) allows a corporation a $25,000 surtax exemption in computing the tax on its annual taxable income. However, in the case of the component members of a controlled group of corporations,[5] limitations are placed on the surtax exemptions which the members are allowed. As a general rule, section 1561(a)(1) provides that each corporation which is a component member of a controlled group of corporations shall be entitled to a surtax exemption of "$25,000 divided by the number of corporations which are component members of such group" on the December 31 within that taxable year. Section 1561(a)(2) permits the controlled group to apportion the group's single surtax exemption among the members if all the members consent to the apportionment plan at the time and in the manner prescribed by the regulations.

A controlled group of corporations may modify the limitations on the surtax exemption prescribed by section 1561(a) if all the members of the group make the multiple surtax exemption election authorized by section 1562(a). Under that election, each member of the group may have a full $25,000 surtax exemption, but in return for this privilege each member must file a separate Federal income tax return and must pay the additional tax imposed by section 1562(b). This additional tax "is an amount equal to 6 percent of so much of a corporation's taxable income for the taxable year as does not exceed the amount of such corporation's surtax exemption for such taxable year." Sec. 1.1562-1(b)(2), Income Tax Regs. The added tax is ap-

---

[5] The term "controlled group of corporations," as defined by sec. 1563(a), includes arrangements where corporations are subject to common control either by another corporation (parent-subsidiary controlled group—sec. 1563(a)(1)) or "by one person who is an individual, estate, or trust" (brother-sister controlled group—sec. 1563(a)(2)), as well as situations where the parent corporation in a parent-subsidiary controlled group is also a member of a brother-sister controlled group (combined group—sec. 1563(a)(3)).

plied without regard to the surtax exemption each corporation in the group would have been allowed under section 1561(a). Thus, the election may work to the advantage or the disadvantage of the group in a particular year. Once this election has been made, however, it applies for all succeeding years, and it cannot be withdrawn except in accordance with the termination provisions in section 1562(c).[6]

Another alternative available to members of a controlled group which qualify as an affiliated group [7] is the privilege of electing to file a consolidated return pursuant to section 1501 [8] and following sections. Under this election, the controlled group is entitled to a single $25,000 surtax exemption, sec. 1.1561-2(a)(2), Income Tax Regs., and none of the members is eligible to continue, or to exercise, the multiple surtax exemption election under section 1562(a). Sec. 1562(c)(3); H. Rept. No. 749, 88th Cong., 1st Sess. (1963), 1964-1 C.B. (Part 2) 246; S. Rept. No. 830, 88th Cong., 2d Sess. (1964), 1964-1 C.B. (Part 2) 654. However, the members who join in filing a consolidated return may, subject to the provisions of the regulations, offset the income, deductions, gains, losses, credits, etc., of each corporation in the affiliated group against similar items of the other affiliated corporations joining in the return. If the option to file a consolidated return has been exercised, the affiliated group is bound to continue to file consolidated returns until permission to file separate returns is granted by the Com-

---

[6] Under sec. 1562(c), the controlled group's multiple surtax election will be terminated if (1) all the members consent to the termination, (2) a new member joins the controlled group and it refuses to consent to the election, (3) one of the group's members joins in the making of a consolidated return, or (4) the controlled group is no longer in existence. The precise language of sec. 1562(c)(3), on which the crucial issue in this case hinges, is as follows:

(c) TERMINATION OF ELECTION.—An election by a controlled group of corporations under subsection (a) shall terminate with respect to such group—

* * * * * * *

(3) CONSOLIDATED RETURNS.—If—

(A) a corporation is a component member (determined without regard to section 1563(b)(3)) of such group on a December 31 included within a taxable year ending on or after January 1, 1964, and

(B) such corporation is a member of an affiliated group of corporations which makes a consolidated return under this chapter (sec. 1501 and following) for such taxable year.

[7] The term "affiliated group," as defined by sec. 1504(a), includes one or more corporations related through specified stock ownership to a common parent.

[8] SEC. 1501. PRIVILEGE TO FILE CONSOLIDATED RETURNS.

An affiliated group of corporations shall, subject to the provisions of this chapter, have the privilege of making a consolidated return with respect to the income tax imposed by chapter 1 for the taxable year in lieu of separate returns. The making of a consolidated return shall be upon the condition that all corporations which at any time during the taxable year have been members of the affiliated group consent to all the consolidated return regulations prescribed under section 1502 prior to the last day prescribed by law for the filing of such return. The making of a consolidated return shall be considered as such consent. In the case of a corporation which is a member of the affiliated group for a fractional part of the year, the consolidated return shall include the income of such corporation for such part of the year as it is a member of the affiliated group.

missioner. Sec. 1.1502–75(a)(2) and (c), Income Tax Regs.; *Regal, Inc.*, 53 T.C. 261 (1969), affirmed per curiam 435 F.2d 922 (C.A. 2, 1970).

The parties agree that during the fiscal year ended September 30, 1967, petitioners were eligible to continue the multiple surtax exemption election they had made several years previously. They also acknowledge that, for the fiscal year 1967, all the members of the controlled group—except Georgia and West End—filed separate returns in which each claimed the maximum allowable surtax exemption, i.e., the taxable income computed on the return or $25,000, whichever is the lesser. In addition, they agree that Georgia and West End were eligible to elect to file a consolidated return and that, in the initial return filed on their behalf, their income, deductions, and credits were combined and a $25,000 surtax exemption was claimed without any plan for the apportionment of the exemption being adopted for the controlled group pursuant to section 1561.

Respondent contends, and petitioners concede, that if the privilege to file a consolidated return is exercised, the return cannot be withdrawn and separate returns filed for each corporation after "the last day prescribed by law (including extensions of time) for the filing of the common parent's return." Sec. 1.1502–75(a)(1), Income Tax Regs.[9] The language of section 1562(c)(3) is clear that a multiple surtax exemption election of a controlled group of corporations terminates if any of its members, in fact, joins in filing a consolidated return. We are thus asked to decide the narrow issue whether the initial return filed on behalf of Georgia and West End was a "consolidated return" within the meaning of section 1562(c)(3). We think it was.

Section 1501, authorizing the filing of consolidated returns and quoted in footnote 8 *supra*, is cast in general terms and gives little guidance as to what is to be regarded as a consolidated return. The rules on this subject are contained almost exclusively in the regulations issued by the Secretary pursuant to section 1502. Those rules must be interpreted in the light of the objective of treating the affiliated group as one business unit, allowing the members to compute their tax by combining their income, deductions, and credits. S. Rept. No. 617, 65th Cong., 3d Sess. (1918), 1939–1 C.B. (Part 2) 123. In

---

[9] The language of sec. 1.1502–75(a)(1), Income Tax Regs., in pertinent part, is as follows:

If a group wishes to exercise its privilege of filing a consolidated return, such consolidated return must be filed not later than the last day prescribed by law (including extensions of time) for the filing of the common parent's return. Such consolidated return may not be withdrawn after such last day (but the group may change the basis of its return at any time prior to such last day).

making the tax computation for an affiliated group filing a consolidated return, these regulations apply to the exclusion of the Code provisions ordinarily applicable. In other words, "The Code, or other law," is applicable to the affiliated group only "to the extent the regulations do not exclude its application." Sec. 1.1502–80, Income Tax Regs.

Petitioners maintain that in deciding whether the Georgia-West End return was a consolidated one we must look to all the provisions of sections 1501 through 1564. In this connection, petitioners emphasize the attempted continuation by all other members of the controlled group of the election to take multiple surtax exemptions as evidence that the Georgia-West End return was not a consolidated return. They argue that, when all the returns are analyzed, it is apparent there was no intention to terminate the election of multiple surtax exemptions by filing a consolidated return.

However appealing petitioners' argument may be, it overlooks one critical factor: the two elections available to certain related corporations, i.e., the consolidated return election and the multiple surtax exemption election, are mutually exclusive. If both elections are made, the statute expressly states which election will be binding. It does not leave the matter in doubt. Section 1562(c)(3) plainly provides that if a consolidated return is made the controlled group's multiple surtax exemption election "shall terminate with respect to such group." The fact that the controlled group was unaware that such election would be terminated is immaterial, since "A mistake as to the consequences of an election freely taken does not lessen the binding character of the election." *Landy Towel & Linen Service, Inc.*, 38 T.C. 296, 302 (1962), affirmed per curiam 317 F.2d 362 (C.A. 3, 1963); *Salem Packing Co.*, 56 T.C. 131, 144 (1971).

While neither the regulations nor the statute attempts to define the term "consolidated return," it is apparent from an examination of the Georgia-West End return that the parties intended it to be a consolidated one. The regulations set forth in elaborate detail how the tax is to be computed in such a return and prescribe the procedure whereby the election of the several corporations is to be manifested. The most important evidence in this respect is the fact that the income, deductions, and credits of the two corporations were combined in the manner contemplated by the consolidated return regulations.[10] This

---

[10] The return also followed the directions of sec. 1.1502–75(h)(1), Income Tax Regs., on a parent corporation's consolidated return, as follows:

(h) *Method of filing return and forms*—(1) *Consolidated return made by common parent corporation.* The consolidated return shall be made on Form 1120 for the group by the common parent corporation. The consolidated return, with Form 851 (affiliations schedule) attached, shall be filed with the district director with whom the common parent would have filed a separate return.

factor alone is usually dispositive of the question whether a consolidated return was filed. *American Pacific W. Co. v. Commissioner*, 74 F.2d 613, 616 (C.A. 9, 1935); cf. *Landy Towel & Linen Service, Inc., supra* at 303.

Moreover, West End complied with section 1.1502–75(b)(1), Income Tax Regs., relating to the subsidiaries covered by a consolidated return, which sets forth the general rule on *"How consent for first consolidated year exercised,"* as follows:

The consent of a corporation * * * [i.e., consent to be bound by the consolidated return regulations] shall be made by such corporation joining in the making of the consolidated return for such year. A corporation shall be deemed to have joined in the making of such return for such year if it files a Form 1122 in the manner specified in paragraph (h)(2) of this section.

Paragraph (h)(2), insofar as here pertinent, provides that a "Form 1122 must be executed by each subsidiary and must be attached to the consolidated return for such year." This was done.

The intention to file a consolidated return was confirmed by the contents of the application for the extension of filing the return; by so designating the return on the face of the Form 1120; by filing it in the name of "Georgia Restaurant Company and Subsidiary"; by the contents of the accountant's letter to Davis transmitting the return to him for signature and filing; and by the Forms 851 and 1122 attached to the return. These factors, detailed in our Findings, leave no doubt that both Davis and the accountant, at the time the Georgia–West End return was filed, intended it to be a consolidated return, an action statutorily inconsistent with the multiple surtax exemption election.

We are compelled to conclude that the return filed by Georgia and West End was a consolidated one. Under the express language of section 1562(c)(3), the filing of this return terminated the multiple surtax exemption election of the controlled group. We find no way whereby petitioners can avoid the impact of the language of that section.

Petitioners' main contention is that the Georgia–West End return was not a consolidated one because it contained three features which were inconsistent with the consolidated return regulations: (1) it claimed a full $25,000 surtax exemption, and the other members of the group did not agree to apportion the group's surtax exemption to Georgia and West End pursuant to section 1561; (2) it reflected payment of the penalty tax imposed by section 1562(b); and (3) it indicated that Georgia and West End were members of a controlled group of corporations subject to the provisions of section 1562.

While we agree that all three of the foregoing items are inconsistent with the consolidated return regulations, we think they must be

weighed in the light of the other factors in the record, discussed above. A consideration of all these factors convinces us that the return in question was a consolidated one. Where the basic tenor of the return as a whole is in harmony with the underlying principles of the consolidated return regulations, mere inconsistencies do not change the fact that the return is a consolidated one. *American Pacific W. Co.* v. *Commissioner, supra.* Cf. *Salem Packing Co., supra* at 144; Rev. Rul. 72–258, 1972–1 C.B. 284. In exercising the consolidated return privilege, the two corporations bound themselves to have their return made, and if necessary adjusted, to conform to the provisions of the consolidated return regulations. Sec. 1502; sec. 1.1502–75(a) and (b)(1), Income Tax Regs.; *Patten Fine Papers* v. *Commissioner*, 249 F.2d 776, 779 (C.A. 7, 1957), reversing on another issue 27 T.C. 772 (1957); *American Trans-Ocean N. Corp.* v. *Commissioner*, 229 F.2d 97, 98 (C.A. 2, 1956), affirming a Memorandum Opinion of this Court.

Petitioners next argue that section 1562(c)(3) does not refer to an inadvertent termination of the multiple surtax exemption election. By this they mean that the Georgia-West End return should not be treated as a consolidated return because they did not intend the consequences which statutorily flow from such an election.

In this connection, petitioners refer to section 1.1562–2(b)(3), Income Tax Regs., which states that each member of a controlled group of corporations "should" notify the district director of the termination of the multiple surtax exemption election if the termination is effectuated by the filing of a consolidated return. But this regulation is merely an administrative direction. It does not deal with the effectiveness of the return as a means of terminating the multiple surtax exemption election. It is to be contrasted with the regulation under section 1562(c)(1), dealing with the termination of the election by the consent of the members of the controlled group, which provides that consents by each component member of the group "shall be filed with the district director." Sec. 1.1562–3(c)(1)(i), Income Tax Regs. Failure to notify the district director within the prescribed period may very well vitiate the proposed termination by consent, but the same rule does not apply where the termination is effected by the making of a consolidated return. Section 1562(c)(3)(B) plainly states that the multiple surtax exemption election terminates if one of the members of the controlled group, which is also a member of an affiliated group, "makes a consolidated return."

We recognize that petitioners evidently thought, at the time they filed their returns, they could obtain the benefits of both the multiple surtax exemption election and the consolidated return regulations. To this end, the consolidated return was filed for Georgia and West End, and a full surtax exemption was claimed on that return as well

as on each of the returns for the other members of the controlled group. After filing those returns, petitioners learned they could not make both elections and sought to undo the termination of the more advantageous multiple surtax exemption election. But the law is plain that this cannot be done.

To bend the statute in this case to say that the Georgia-West End return was not a consolidated one would clearly work to the advantage of these corporations for the years in controversy.[11] However, a definition of the term "consolidated return" which accommodates the petitioners in this case may entrap the next group of corporations attempting to make the consolidated return election. There must be a consistent rule for all taxpayers. We must apply the law as Congress wrote it. As we view the applicable statute and regulations in the light of the facts of this case, they compel a holding that petitioners' multiple surtax exemption election was terminated and that the determined deficiencies be sustained.

> *Decisions will be entered under Rule 50 in docket Nos. 6484–71, 6487–71, and 6490–71.*
>
> *Decisions will be entered for the respondent in docket Nos. 6486–71, 6488–71, 6489–71, 6491–71, 6492–71, 6493–71, 6494–71, and 6495–71.*

---

[11] The multiple surtax exemption provisions are currently being phased out by sec. 1564. After the tax year which includes Dec. 31, 1974, this election will no longer be available to corporations.