MILLETTE AND ASSOCIATES, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Millette & Associates, Inc. v. Commissioner
Docket No. 5127-76
United States Tax Court
T.C. Memo 1978-180; 1978 Tax Ct. Memo LEXIS 334; 37 T.C.M. (CCH) 774; T.C.M. (RIA) 780180; May 16, 1978, Filed C. Everette Boutwell, for the petitioner. Roy S. Fischbeck, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined deficiencies in petitioner's Federal corporate income tax for the taxable *335 year 1972 in the amount of $59,169.92 and addition to tax under section 6651(a), [1] Internal Revenue Code of 1954, in the amount of $14,792.48. Due to concessions the issues for decision are: (1) Whether petitioner is entitled to have its income tax liability for the taxable year 1972 determined on a consolidated basis with its subsidiary, Millette Enterprises, Inc.; (2) Whether insurance commissions and service fees in the amount of $177,199.35 are includable in petitioner's gross income for the taxable year 1972; and (3) Whether petitioner is liable for a 25 percent addition to tax under section 6651(a) for failure to file a timely return for the taxable year 1972. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein. Petitioner, Millette & Associates, Inc. (hereinafter referred to as Associates), is a corporation organized and incorporated under the laws of the State of Mississippi on February 24, 1962. Associates engaged in the business of operating an insurance agency. Its principal place of business *336 was Pascagoula, Mississippi, at the time of filing the petition in the instant case. For all taxable years in issue Associates has utilized the accrual method of accounting. Its sole shareholders were Theodore J. Millette, Thomas S. Millette and William G. Millette (hereinafter referred to collectively as the Millettes). Prior to May 1, 1965, Millette-Straughn, Inc. (Straughn) was a corporation organized and incorporated under the laws of Mississippi and engaged in the business of operating a life insurance agency in Pascagoula, Mississippi.Its outstanding stock was owned by Theodore J. Millette and Thomas S. Millette in equal amounts. On May 1, 1965, Straughn negotiated an agreement with Ingalls Shipbuilding Division of Litton Industries (hereinafter referred to as Ingalls) to service the group medical insurance plan for the employees of Ingalls. Pursuant to this agreement Straughn contracted with Fireman's Fund American Insurance Company to provide coverage for the insurance plan. Fireman's Fund paid commissions to Straughn based on the amount of premiums paid for coverage. Straughn paid all claims under the agreement from a bank account maintained by Fireman's Fund. *337 In January 1967 Straughn merged with Associates. Associates succeeded to the agreement with Ingalls and continued to service the group insurance plan for the employees of Ingalls. [2] The merger resulted in stock ownership as follows: Theodore J. Millette--51 percent; Thomas S. Millette--24.5 percent; and William G. Millette--24.5 percent. These stockholders continued to serve as directors and officers of Associates as they had served prior to the merger. Instant Builders & Movers, Inc., was a corporation organized and incorporated under the laws of Mississippi in June 1970. Its principal corporate activity included the purchase, ownership and operation of an apartment complex. In addition, it owned a tract of land which was subdivided and improved for purposes of sale. The Millettes were the directors and principal shareholders of Instant Builders & Movers, Inc. Millette Building, Inc., was a corporation organized and incorporated under the laws of Mississippi in June 1970 for the purpose of owning and operating *338 the Millette Office Building located in Pascagoula, Mississippi. On February 25, 1972, Millette Building was merged with Instant Builders & Movers to form Millette Enterprises (hereinafter referred to as Enterprises). The principal business purpose of Enterprises included the construction, ownership and leasing of office buildings. Enterprises was also formed for the purpose of participating as an agent in the field of general insurance. [3]
On May 15, 1972, Associates and Enterprises consummated a plan of reorganization whereby Enterprises became a subsidiary of Associates. Following the reorganization the Millettes owned all outstanding stock of Associates and Associates owned 80 percent of all outstanding stock of Enterprises. [4]
Associates purportedly transferred the Ingalls agreement, the commissions and service fees to Enterprises, although there was no formal assignment between Associates and Enterprises. Fireman's Fund was notified to pay the commissions and service fees earned under the agreement *339 to Enterprises. [5] However, insurance commissions paid by Fireman's Fund were credited to Associates' account as late as December 1973. Associates continued to perform services under the agreement with Ingalls during 1972 as it had done in prior years. It furnished office facilities, employees and paid all operating expenses connected with the Ingalls agreement. Enterprises did not have the ability or capacity to administer the services due to a lack of staff, office equipment, and financing. The corporate books of Associates for 1972 reflect the following: Gross Receipts
$ 115,400.00 * *340 Gross Rental Income
1,220.00
Expenses
171,327.00
In 1974 respondent conducted an audit of Associates' income tax return for the taxable year 1972. Pursuant to the audit Associates furnished a copy of a return which had been prepared for the taxable year 1972 by Mr. Clinton Walker, Jr., a certified public accountant. During 1972 the Millettes, along with Mr. Walker discussed the possibility of filing a consolidated return for Associates and Enterprises for the taxable year 1972. The discussions were extensive and included the participation of Associates' tax attorney. As a result, Mr. Walker prepared a consolidated return for the taxable year 1972 and mailed it to Theodore Millette, president of Associates. Mr. Millette does not remember receiving the consolidated return from Mr. Walker nor does he remember signing or filing a return for 1972. On two occasions during the audit respondent filed a request for a corporate income tax return of Associates for 1972. Each time respondent was notified by the Internal Revenue Service Center, Chamblee, Georgia (hereinafter referred to as Atlanta Service Center), *341 that no return had been filed by Associates for the taxable year 1972. [6]
On May 9, 1975, the Atlanta Service Center received a copy of a Federal corporate income tax return from Associates. The return was signed by Theodore Millette and indicated that it was a consolidated return for the taxable year 1972. A note accompanied the copy of the return and stated that Associates' accountant had timely prepared a consolidated return for the taxable year 1972. The note further stated that the return for 1972 had been forwarded by the accountant to Associates for signature and filing. The copy of the return received by the Atlanta Service Center on May 9, 1975, differed from the copy of the return furnished pursuant to the audit conducted in 1974 in that the latter included only work papers of Associates for its taxable year 1972. The copy of the return filed in 1975 disclosed that for 1972 Associates and Enterprises had income of $116,660 and $326,294, respectively; total deductions of $171,227 and $375,235, respectively; and operating losses of $54,567 *342 and $48,941, respectively, which generated a consolidated operating loss of $103,508. In April 1977 Associates requested the custodian of records at the Atlanta Service Center and the Federal Records Center [7] to prepare a transcript of Associates' account for 1972. In response to this request, the custodians reported that a copy of a consolidated return for 1972 had been filed May 9, 1975, and that no extensions of time to file corporate income tax returns had been submitted by or on behalf of Associates or Enterprises. Again, prior to the trial of the instant case counsel for Associates and respondent requested the custodian to conduct another search of files and records in an effort to ascertain the existence or nonexistence of a consolidated return filed by Associates. The results of this search were the same as the previous search. *343 The Commissioner, in his statutory notice of deficiency, determined that: (1) Associates had not filed a Federal corporate income tax return for the taxable year 1972 within the time prescribed by law; (2) because Associates had not shown that the failure to file the return on time was due to reasonable cause, Associates was subject to the penalty provisions of section 6651(a); and (3) the gross receipts of Associates for the taxable year 1972 should include the total commissions earned during 1972 pursuant to the Ingalls agreement. OPINION The first issue for decision is whether petitioner is entitled to have its income tax liability for the taxable year 1972 determined on a consolidated basis with its subsidiary, Enterprises, under section 1501, Internal Revenue Code of 1954. Petitioner contends that it timely filed a consolidated return for the taxable year 1972. In the alternative petitioner argues that the late filing of the consolidated return in May 1975 does not preclude the application of section 1501. Respondent takes the position that petitioner and Enterprises are not entitled to the privilege of having their income tax liability determined *344 on a consolidated basis due to failure to file a consolidated return within the time prescribed by law.Respondent argues that the prerequisites set forth in section 1.1502-75(a)(1), Income Tax Regs., must be satisfied before petitioner is entitled to file a consolidated return. We agree with respondent. Section 1.1502-75(a)(1), Income Tax Regs., provides in part: If a group wishes to exercise its privilege of filing a consolidated return, such consolidated return must be filed not later than the last day prescribed by law (including extensions of time) for filing of the common parent's return. * * * [Emphasis added.] The last day prescribed by law for the filing of petitioner's (the common parent) return for the taxable year 1972 was March 15, 1973. Sec. 6072(b), I.R.C. 1954. In order to invoke the privilege of filing a consolidated return, it is necessary to strictly comply with the regulations promulgated under section 1502. General Manufacturing Corp. v. Commissioner,44 T.C. 513 (1965); Oklahoma Contracting Corporation v. Commissioner,35 B.T.A. 232 (1937); Smith Paper Company v. Commissioner,31 B.T.A. 28 (1934). *345 Therefore, petitioner was required to file the consolidated return by March 15, 1973, or obtain an extension and file the return within the extended period. However, the record before us indicates that petitioner neither filed a consolidated return on or before March 15, 1973, nor obtained an extension for filing it. Petitioner's accountant testified that he prepared a consolidated return for petitioner and mailed it to Theodore Millette, president of petitioner. Mr. Millette testified that he could neither remember receiving the consolidated return from his accountant, nor remember signing, mailing or filing a consolidated return for petitioner's taxable year 1972. In addition, petitioner offered purported copies of applications for an extension of time to file its return, as well as a copy of a consolidated return for 1972 which had been given to respondent during its audit in 1974 and subsequently filed with the Atlanta Service Center on May 9, 1975. However, the return given to respondent during the audit differs dramatically from the return subsequently filed in 1975 in that the return given to respondent in 1974 contained no consolidated schedule. It contained work papers *346 relating to petitioner. Extensive searches were conducted by the custodians of the Atlanta Service Center and the Federal Records Center pursuant to the requests of both petitioner and respondent. The results of these searches failed to produce any evidence which would indicate that petitioner had timely filed a consolidated return for 1972 or an extension of time to file it. Petitioner relies on Daron Industries, Inc. v. Commissioner,62 T.C. 847 (1974), and Davis Bros. Restaurant v. Commissioner,60 T.C. 525 (1973). The decisions of both Daron and Davis are inapposite to the facts in the instant case. In Daron the taxpayer filed its consolidated return 6 days beyond the extended period of filing. However, the common parent and its subsidiaries had timely filed, on a consolidated basis, an application for an automatic extension of time to file a consolidated return. In addition the subsidiaries filed the appropriate consents prior to the date that the consolidated return was due. Based on the regulations which applied to pre-1966 years we held that the consolidated return was valid. In so holding we stated: These provisions *347 are applicable only to the taxable years beginning before January 1, 1966, * * *. The substantially different provisions of section 1.1502-75 are applicable to later years, * * * and our decision herein is not intended to be dispositive of any similar question arising under those regulations governing post-1965 years. [62 T.C. at 855, n. 6.] In Davis we held that two corporations, members of an affiliated group, filed a consolidated return which had the effect of terminating the controlled group's multiple surtax exemption election. The single return filed by the two corporations met the requirements of the regulations promulgated under section 1502 (i.e., a single return which combined their income, deductions, and credits). Therefore, petitioner is not entitled to the privilege of having its income tax liability for the taxable year 1972 determined on a consolidated basis with its subsidiary Enterprises. Petitioner has failed to carry its burden of proof of establishing that it compled with the conditions of section 1.1502-75(a)(1), Income Tax Regs., which require a consolidated return to be filed within the time prescribed by law. The next issue for *348 decision is whether insurance commissions and service fees in the amount of $177,199.35 are properly includable in the gross income of petitioner for the taxable year 1972. Respondent takes the position that the commissions and fees are includable in the gross income of petitioner because petitioner actually earned them. Petitioner contends that the Ingalls agreement, from which the commissions and fees came, was assigned to Enterprises by petitioner and therefore any income flowing from the agreement is includable in the gross income of Enterprises. During 1965 the Millettes, in their capacity as officers of petitioner (Straughn at that time) entered into an agreement with Ingalls to service the group insurance plan for its employees. The Millettes contracted with Fireman's Fund to provide coverage for the plan. Straughn merged with petitioner in 1967 and all rights under the Ingalls agreement were acquired by petitioner. In May 1967 petitioner acquired 80 percent of the stock of Enterprises. Petitioner continued to service the plan from 1967 through 1972. Sometime in 1972 petitioner notified Fireman's Fund to pay the insurance commissions and service fees generated from *349 the Ingalls agreement to Enterprises. However, no documentation regarding either the purported assignment of the Ingalls agreement or the transfer of the commissions and fees to Enterprises was produced during the trial. Petitioner continued to perform all services under the agreement during 1972. It used its office facilities, employees and paid all operating expenses incurred in performing the services. [8] Enterprises was unable to perform under the agreement due to lack of staff, equipment and, most importantly, financial stability. These facts raise the questions of who actually earned the commissions and fees. It is an axiom in tax law that income must be taxed to him who earns it. Commissioner v. Culbertson,337 U.S. 733 (1949). An equally basic principle is that one who earns income cannot avoid taxation by diverting it to another entity. United States v. Basye,410 U.S. 441 (1973); Lucas v. Earl,281 U.S. 111 (1930). The earner of income is one whose personal efforts produced it. Clearly petitioner earned *350 the commissions and fees under the Ingalls agreement. Enterprises was unable to perform the services required under the agreement. The agreement by its very nature was executory and carried with it no right to income without performance by the servicing agent. Petitioner concedes this fact. Moreover, petitioner controlled the production and amount of income which came from servicing the Ingalls agreement. American Savings Bank v. Commissioner,56 T.C. 828 (1971); Ronan State Bank v. Commissioner,62 T.C. 27 (1974). Accordingly, we find that the commissions and fees amounting to $177,199.35 were earned by petitioner in 1972. Petitioner's argument that it was the agreement which was assigned to Enterprises and not the income has no basis in the record before us. This is especially true in light of the nature of the agreement between petitioner and Ingalls (i.e., executory in nature). The final issue for decision is whether petitioner is liable for a 25 percent addition to tax under section 6651(a) for failure to file a timely return for the taxable year 1972. Section 6651(a) provides for an addition to tax for failure to timely file a *351 return unless such failure is due to reasonable cause and not willful neglect. Petitioner takes the position that any delay in filing its return for 1972 was due to its president's not being knowledgeable of filing deadlines and the reliance it placed on tax advisers to see that the 1972 return was timely filed. It is well-settled that the absence of willful neglect in failure to file a timely return does not preclude the application of section 6651(a). Lee v. Commissioner,227 F.2d 181 (5th Cir. 1955). Petitioner must further show that the failure to timely file its return for 1972 occurred in spite of the exercise of ordinary business care and prudence. Mauldin v. Commissioner,60 T.C. 749 (1973). It has failed to do this. The testimony is uncontradicted on this matter. Neither the accountant nor Mr. Millette, president of petitioner, took steps to assure a timely filing. Mr. Millette could not remember whether he received the return prepared by petitioner's accountant. Moreover, he could not remember signing or filing a return for the taxable year 1972 in his capacity of president of petitioner. Therefore, we cannot hold that the failure to *352 file a timely return was based on reasonable cause. BJR Corporation v. Commissioner,67 T.C. 111 (1976); Cf. Logan Lumber Co. v. Commissioner,365 F.2d 846 (5th Cir. 1966). Accordingly, we hold that petitioner is liable for an addition to tax under section 6651(a). Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. The agreement with Ingalls was renegotiated in November 1971 and Associates continued as the servicing agent with Fireman's Fund as the insurance carrier.↩
3. Enterprises was licensed as an insurance agency in Mississippi on September 1, 1972.↩
4. The remaining 20 percent of outstanding stock was owned by James Tackett.↩
5. On September 11, 1972, the Merchants and Marine Bank of Pascagoula, Mississippi, received insurance commissions paid by Fireman's Fund in the amount of $17,637.13, as partial satisfaction of a loan made to Associates.↩
*. This amount ($115,400.00) includes commissions earned by Associates during November and December 1971 in the respective amounts of $3,329.91 and $15,202.50. The corporate books of Enterprises for 1972 (from February through December 1972) reflect the following: Commissions from Fireman's Fund
$ 177,199.35
Cost of servicing Ingalls Agreement
per month
4,000.00 This amount includes expenses for salaries, payroll taxes, telephone, postage, rent, supplies and equipment depreciation.
*↩
6. For the calendar year 1972 all Mississippi taxpayers were required to file their returns with the Atlanta Service Center.↩
7. Jurisdiction of the Atlanta Service Center extends to the States of Mississippi, Alabama, Florida, Georgia and South Carolina. In addition to filing their respective returns with the Atlanta Service Center, Mississippi taxpayers could also file their returns with any Internal Revenue Service District Office in Mississippi. In such event, the District Office followed the standard operating procedure of forwarding the return to the Atlanta Service Center. Corporate returns filed at the Atlanta Service Center are kept at least six months. Thereafter, the returns are transferred to the Federal Records Center at Eastport, Georgia, where they remain for seven years. Eventually the returns are again transferred to the Records Center at Mechanicsburg, Pennsylvania, where they remain forever.↩
8. Petitioner paid all withholding and FICA taxes for all employees who serviced the Ingalls agreement.↩